**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
In re                                                    Case No.: 23-71078-LAS

**GREEN POINT MANAGEMENT SYSTEMS, LLC,**     **Chapter 11**

                                                    **Debtor.**
-------------------------------------------------------------------X


### DEBTOR'S PLAN
### OF REORGANIZATION

Green Point Management Systems, LLC, debtor and debtor-in-possession (the "Debtor")

proposes the following Plan of Reorganization (the "Plan") pursuant to Chapter 11 of Title 11 of

the United States Code, 11 U.S.C. § 101, *et. seq.* (the "Bankruptcy Code").


### ARTICLE I

### DEFINITIONS

1.      For the purposes of this Plan, the following terms shall have the respective meanings as

hereinafter set forth (such meanings to be equally applicable to the singular and plural

forms of the terms defined, unless the context otherwise requires).   Capitalized terms

used in this Plan shall at all times refer to the terms as defined in this Article I.   A term

used in this Plan which is not defined herein but is defined in the Bankruptcy Code shall

have the meaning assigned to such term in the Bankruptcy Code. A term used in this Plan

which is not defined herein or in the Bankruptcy Code but is defined in the Bankruptcy

Rules shall have the meaning assigned to such term in the Bankruptcy Rules. Accounting

terms, if any, not otherwise defined in this Plan shall have the meanings assigned to them

in accordance with generally accepted accounting principles currently in effect. The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole, including all exhibits and schedules, if any, annexed hereto, as the same may from time to time be amended or supplemented, and not to any particular article, section or subdivision contained in this Plan.

1.1 "**Administration Claim**" means a claim for any cost or expense of administration in connection with this Bankruptcy Case of a kind specified in sections 503(b) and 502(f) of the Bankruptcy Code and referred to in sections 507(a)(1) and 1114 of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses incurred after the Petition Date and up to the Effective Date of preserving the Estate of the Debtor, any indebtedness or obligation incurred or assumed by the Debtor, as debtor-in-possession, in connection with the conduct of its business, allowances of compensation for legal or other services and reimbursement of costs and expenses under §§ 330(a) or 331 of the Bankruptcy Code or otherwise allowed by the Court, all costs of making distributions and providing notices and ballots with respect to the Plan.

1.2 "**Allowed Administration Claim**" means all or that portion of any Administration Claim that either has been allowed by a Final Order or has not been objected to within the time period established by this Plan or an order of the Bankruptcy Court.

1.3 "**Allowed Claim**" means a Claim or portion of a Claim: A.) which is scheduled by the Debtor pursuant to §§ 521(1) and 1106(a)(2) of the Bankruptcy Code, other than a Claim which is scheduled by the Debtor, including through amended schedules as disputed, contingent, unliquidated or unknown; or B.) proof of which has been filed, pursuant to

§ 501(a) of the Bankruptcy Code, on or before the date designated by the Court as the last date for the timely filing of proofs of claim, and with respect to which Claim no objection to the allowance thereof has been interposed prior to the final date for filing such objections set forth in an order of the Court; or C.) which, after objection thereto, has been allowed, in whole or in part, by a Final Order; or (D.) which has been allowed pursuant to a Final Order.

1.4 "**Allowed Priority Claim**" means a Priority Claim to the extent it is or has become an Allowed Claim.

1.5 "**Allowed Priority Tax Claim**" means a Priority Tax Claim to the extent it is or has become an Allowed Claim and that, in any event, shall be reduced by the amount of any offsets, credits or refunds to which the Debtors shall be entitled on the Effective Date.

1.6 "**Allowed Secured Claim**" means a Secured Claim to the extent it is or has become an Allowed Claim.

1.7 "**Allowed Unsecured Claim**" means an Unsecured Claim to the extent it is or has become an Allowed Claim. Interest accrued after the Petition Date shall not be part of any Allowed Unsecured Claim.

1.8 "**Bankruptcy Case**" means this Chapter 11 reorganization case filed on March 29, 2023, case number 23-71078-las.

1.9 "**Bankruptcy Code**" means Title I of the Bankruptcy Reform Act of 1978, (11 U.S.C. §§ 101, *et. seq.*) as amended.

1.10 "**Bankruptcy Court**" or "**Court**" means the United States District Court for the Eastern District of New York, having jurisdiction over this Bankruptcy Case and to the extent of

any references made pursuant to 28 U.S.C. § 157, the United States Bankruptcy Court for the Eastern District of New York.

1.11    "**<u>Bankruptcy Rules</u>**" means the Federal Rules of Bankruptcy Procedure, together with all amendments and modifications from time to time made thereto as prescribed under 28 U.S.C. § 2075 (1978).

1.12    "**<u>Bar Date</u>**" means the last date for filing Claims as fixed by the Court which in this Bankruptcy Case is August 15, 2023, provided, however, that if the Court extends the time for filing any given Claim or Interest, the date so set shall be the Bar Date with respect to such Claim or Interest, but only with respect to such Claim or Interest.

1.13    "**<u>Bid</u>**" means the amount bid at the Auction for the property.

1.14    "**<u>Bid Procedures</u>**" means those procedures approved by the Bankruptcy Court and attached to the Disclosure Statement as Exhibit B that govern the conduct of the Auction for the Property, the qualification of bidders to bid at each Auction and other matters related thereto.

1.15    "**<u>Bidding Procedures Order</u>**" means the order entered by the Court approving the Bid Procedures for the Auction in connection with the Sale.

1.16    "**<u>Broker</u>**" means Northgate Real Estate Group or such other real estate broker retained by the Debtor to market and auction the Property pursuant to 11 U.S.C. §§ 363, 1123(a)(5)(D), and 1123(b)(4) to obtain the highest and best price, in accordance with the applicable provisions of the Bankruptcy Code.

1.17    "**<u>Broker Retention Order</u>**" The order entered by the Court approving the retention by Estate of the Broker.

1.18 **"Business Day"** means any day other than a Saturday, Sunday or legal holiday (as such term is defined in Bankruptcy Rule 9006).

1.19 **"Cash"** means cash and cash equivalents, including but not limited to, bank deposits, checks and other similar items.

1.20 **"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

1.21 **"Claim"** means a claim against the Debtors as further defined in § 101(4) of the Bankruptcy Code, and shall include, but not be limited to, any Claim against the Debtors for pre-petition goods and/or services provided to the Debtors, pre-petition interest, post-petition interest or contingent interest, any contingent Claim, any Claim against the Debtors arising out of the rejection of any Executory Contract, any Claim arising from the recovery of property under §§ 550 or 553 of the Bankruptcy Code, and any Claim for a tax entitled to priority under § 507(a) of the Bankruptcy Code.

1.22 **"Claimant"** means the holder of a Claim.

1.23 **"Class"** means a category of holders of Claims or Interests as provided for in Article II of this Plan.

1.24 **"Closing"** means the closing of the sale of the Property to the Successful Bidder at which point title to the Property will be transferred to the Successful Bidder inaccordance with the Sale Approval Order. The Closing, unless ordered otherwise by the Bankruptcy Court, shall take place on the Effective Date.

1.25 **"Confirmation"** means entry of an order by the Court confirming this Plan in accordance with Chapter 11.

1.26 **"Confirmation Date"** means the date upon which the Court enters an order confirming

this Plan in accordance with Chapter 11.

1.27 "**Confirmation Order**" means the order entered by the Court confirming this Plan in accordance with Chapter 11.

1.28 "**Confirmation Hearing**" means the hearing, pursuant to Bankruptcy Code § 1128 to consider confirmation of this Plan.

1.29 "**Credit Bid**" means a mechanism whereby a secured creditor can bid up to the Allowed amount of its secured debt as consideration for the purchase of the assets that secure its debt.

1.30 "**Debtor**" means Green Point Management Systems, LLC which is the subject of this Bankruptcy Case for reorganization under Chapter 11 of the Bankruptcy Code.

1.31 "**Disallowed Claim**" means any Claim or portion thereof that has been disallowed by the Court by a Final Order.

1.32 "**Disclosure Statement**" means the disclosure statement, as modified or amended, that (i) relates to this Plan and (ii) is approved by the Bankruptcy Court under § 1125 of the Bankruptcy Code.

1.33 "**Disputed Claim**" means (i) a Claim or portion of a Claim (other than an Allowed Claim) which is scheduled by the Debtors as disputed, contingent, unliquidated or unknown, or (ii) a Claim which has been filed pursuant to § 501(a) of the Bankruptcy Code as unliquidated or contingent, or (iii) a Claim which has been filed pursuant to § 501(a) of the Bankruptcy Code and as to which an objection to the allowance thereof has been interposed within the time limitation fixed by the Bankruptcy Code, by an order of the Court, or by this Plan, which objection has not been determined, in whole or in

part, by a Final Order.

1.34    "**Effective Date**" means the earlier of the day the Debtor closes on the:   a.) refinancing for the Property; or b.) sale of the Property.

1.35    "**Equity Security**" has the meaning provided by Bankruptcy Code § 101(16).

1.36    "**Insider**" has the meaning provided by Bankruptcy Code § 101(31).

1.37    "**Estate**" means the estate created in this Bankruptcy Case pursuant to §541 of the Bankruptcy Code.

1.38    "**Executory Contracts**" means unexpired leases and executory contracts within the meaning and context of § 365 of the Bankruptcy Code.

1.39    "**Exempt Taxes**" means any and all stamp, transfer, mortgage recording, and other taxes to which the exemption contained in Section 1146(a) of the Bankruptcy Code is applicable, including, without limitation, the New York State Real Estate Transfer Tax and Mortgage Recording Tax, Mansion Tax, and New York State and any County Sales Tax, and the City of New York Transfer and Mortgage Recording Tax.

1.40    "**Final Order**" means an order or judgment of a court, the implementation or operation or effect of which has not been reversed, stayed, modified or amended and as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken or is pending.

1.41    "**Funder**" means the person providing the monies to fund the Plan's implementation through either the sale of the Property or refinancing.

1.42    "**Insider**" has the meaning provided by Bankruptcy Code § 101(31)

1.43  "**Petition Date**" means March 29, 2023, the date on which the voluntary petition for relief under the Bankruptcy Code was filed.

1.44  "**Plan**" means this Chapter 11 Plan of Reorganization as modified or amended from time to time as and to the extent permitted herein or by the Bankruptcy Code.

1.45  "**Priority Claim**" means all or that portion of a Claim entitled to priority under Bankruptcy Code § 507(a)(3) and (4).

1.46  "**Priority Tax Claim**" means any Claim entitled to priority under Bankruptcy Code § 507(a)(7).

1.47  "**Professional Person**" shall have the meaning set forth in Bankruptcy Code § 327(a).

1.48  "**Property**" means the Debtor's condominium located at 231 Norman Avenue, suite 106, Brooklyn, New York.

1.49  "**Pro-Rata**" means, with respect to an amount of Cash to be paid or distributed on a particular date to a Claimant holding an Allowed Claim in a particular Class, the ratio, as of such date, of the then outstanding amount of the Allowed Claim of such Claimant to the aggregate amount of Allowed Claims and Disputed Claims in the particular Class.

1.50  "**Reorganized Debtor**" means the Debtor after the entry of the Confirmation Order.

1.51  "**Reserve Fund**" means a fund which shall be established by the Debtor after the confirmation date, which shall be equal to a sum sufficient to pay (i) disputed claims which would have been paid under the Plan but for the dispute as either claimed by the creditor or determined by the Court, any funds held for this purpose shall be held in either (a) an escrow account of Debtor's counsel, or (b) in a bank account at a financial institution that is an authorized depository in the Eastern District of New York; and

(ii) estimated fees of the Debtor's counsel and accountants, which will be incurred subsequent to the confirmation date.

1.52 "**Secured Claim**" means all or that portion of any Claim that is secured by a valid perfected lien on property of the Debtor, to the extent of the value of the interest of the holder of such Claim in such property of the Debtor, as determined by agreement between the Debtor and the holder of such Secured Claim or by the Court by a Final Order pursuant to Bankruptcy Code § 506(a) together with such interest (including, where applicable, interest accrued on and after the Petition Date), fees, costs and charges as may be allowed by such agreement or by the Court under Bankruptcy Code § 506(b).

1.53 "**Unclaimed Property**" means any Cash (together with any interest earned thereon) that is unclaimed within six (6) months after such Cash is distributed, and shall include: (i) checks (and the funds represented thereby) that have been returned as undeliverable; (ii) funds for checks that have not been paid or negotiated; and (iii) checks (and the funds represented thereby) that were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same.

1.54 "**Unsecured Claim**" means any Claim other than a Priority Claim, a Priority Tax Claim, a Secured Claim, and an Administration Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

2.1 **Division of Classified Claims:** A Claim is in a particular Class only to the extent such Claim qualifies within the description of that Class and is in a different Class to the extent that the remainder of the Claim qualifies within the description of the different Class.

2.2 **Allowed Claims:** An Allowed Claim is in a particular Class only to the extent the Claim

is an Allowed Claim as defined herein in a particular Class and has not been paid prior to the Effective Date.

2.3   **Classification:** Claims asserted against the Debtors are divided into the following Classes:

2.03.1 Class 1 shall consist of:

The Secured Claim of Columbia Capital Co., secured by the mortgage on the Debtor's Property

2.03.2 Class 2 shall consist of:

All Other Secured Claims including that of Charles Feit

2.03.3 Class 3 shall consist of:

All Allowed Claims Entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8))

2.03.4 Class 4 shall consist of:

The Claims of Taxing Authorities    .

2.03.5 Class 5 shall consist of:

General Unsecured Creditors of the Debtor

2.03.6 Class 6 shall consist of:

Unsecured Insider Creditors of the Debtor

2.03.7 Class 7 shall consist of:

Holders of Equity Security Interests

2.4   **Administrative Expense Claims:** Administrative Expense Claims are not classified under the Plan in accordance with Bankruptcy Code § 1123(a)(1). Each Allowed Administrative Expense Claim shall be paid in full in Cash on the later of: a.) the Effective Date; or b.) in the event such Administrative Expense Claim is not Allowed as of the Effective Date, the date on which the Bankruptcy Court enters an order allowing such Administrative Expense Claim; or c.) such later date as the Debtor (or, if it is after

the Effective Date, the Post-confirmation Debtor) and the Holder of such Allowed Administrative Expense Claim otherwise agree in writing, or as soon thereafter as is practicable; *provided, however*, that Allowed Administrative Expense Claims incurred by the Debtor or the Post-confirmation Debtor after the Confirmation Date, including, without limitation, claims for Professionals' Fees, shall not be subject to application and may be paid by the Debtor or the Post-confirmation Debtor, as the case may be, in the ordinary course of business and without further Bankruptcy Court approval.

2.5    Any Claimant seeking allowance of an Administrative Expense Claim for an Administrative Expense Claim the amount of which is not agreed to in writing by the Debtor or the Post-confirmation Debtor and the Claimant, or otherwise Allowed by a Final Order, must file proof of its Administrative Expense Claim with the Bankruptcy Court and serve a copy thereof upon: (a) Debtor's counsel, Jacobs P.C. Attn: Leo Jacobs, Esq.; and (b) the Office of the United States Trustee, no later than fifteen (15) days following the Confirmation Date; *provided, however*, that with respect to any such timely filed Administrative Expense Claim, such Claim shall be Allowed only if: (i) the amount is agreed to in writing by the Debtor or the Post-confirmation Debtor and such Claimant; (ii) no objection to the allowance thereof is interposed by the Debtor or the Post-confirmation Debtor on or before thirty (30) days after the Effective Date, or such other date as may be established by the Bankruptcy Court; or (iii) if an objection is interposed: (1) such Administrative Expense Claim has been allowed by a Final Order; or (2) such objection is withdrawn.  With respect to Claimants seeking allowance of Professional Fees as Administrative Expense Claims, all applications for final compensation of Professionals for services rendered and for reimbursement of expenses incurred for any period prior to the Confirmation Date must be filed no later than thirty (30) days following the Confirmation Date, and shall be deemed Allowed following entry by the Bankruptcy Court of any final order or orders allowing same.

# ARTICLE III

## TREATMENT OF CLAIMS

3.1 **Class 1 - The Secured Claim of Columbia Capital Co.:** Unless otherwise agreed to, Allowed Claims of Class 1 Creditors will be paid, in full, on the Effective Date.

This Class is unimpaired.

3.2 **Class 2 Claims - All Other Secured Claims:** Unless otherwise agreed to, Allowed Class 2 Claims will be paid in full on the Effective Date.

This Class is unimpaired.

3.3 **Class 3 Claims Entitled to Priority under § 507 of the Code (Except § 507(a)(2) Administrative Expense Claims and § 507(a)(8)) Priority Tax Claims):** Unless otherwise agreed to, Allowed Class 3 Claims will be paid in full on the Effective Date.

This Class is unimpaired.

3.4 **Class 4 Claims - The Claims of Taxing Authorities:** Unless otherwise agreed to Allowed Class 4 Claims will be paid in full on the Effective Date.

This Class is unimpaired.

3.5 **Class 5 Claims - General Unsecured Creditors:** Unless otherwise agreed to Allowed Class 5 Claims will be paid in full on the Effective Date.

This Class is unimpaired.

3.6 **Class 6 Claims - Unsecured Insider Creditors:** Allowed Claims of Class 6 Creditors will be paid in full through periodic payments when available, provided: a.) the Claims of Classes 1-5 are paid in full; and b.) there are sufficient net revenues to make the payment.

This Class is impaired.

3.7 **Class 7 - Holders of Equity Security Interests**: The Equity Security holder will retain his Equity Security Interests in the Debtor.

This Class is unimpaired.

**ARTICLE IV**

**ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF
REJECTION BY ONE OR MORE CLASSES OF CLAIMS**

4.1.    Each impaired Class of Claims shall be entitled to vote to accept or reject this Plan.

4.2.    A Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of (a) at least two-thirds in dollar amount and (b) more than one-half in number of the Allowed Claims of such Class that have voted on the Plan.

4.3     In the event that any impaired Class of Claims with Claims against the Debtor's Estate shall fail to accept the Plan in accordance with § 1129(a) of the Bankruptcy Code, the Debtors reserves the right to request that the Court confirm the Plan in accordance with the "cram down" provisions of Bankruptcy Code § 1129(b).

4.4     Unimpaired Classes are deemed to have accepted the Plan and are not entitled to vote.


**ARTICLE V**

**MEANS FOR IMPLEMENTING THIS PLAN**

5.1     **Plan Implementation:** This Plan is to be implemented in a manner consistent with Section 1123 of the Bankruptcy Code.

5.2     **Funding of Claims:** The Debtor shall: A.) sell its Property and use the proceeds of that sale to fund the Plan; or B.) refinance prior to the scheduled closing of the sale of the Property, pursuant to this Plan, the Debtor obtains a refinancing sufficient to satisfy the obligations and terms of this Plan.

5.3     **Refinancing:** If the Debtor refinances its Property, it shall be with a loan sufficient to pay all Claims which must be paid on the Effective Date. The Debtor estimates that amount to be $500,000 (the "Refinance"). The Refinance shall be secured by a first, most senior mortgage on the Property and be subject to the terms of loan documents to be approved

by the Court, pursuant to Bankruptcy Code §§ 363 and 364. The terms of the loan documents for the Refinance shall conform substantially to the terms of a Commitment Letter between the lender and the Debtor and which will be subject to Court's approval. The protections of Bankruptcy Code § 364(c) shall apply to the Refinance, the mortgage lien granted to Refinance lender and all aspects of and documents pertaining to the Refinance. The Refinance shall be repaid and/or satisfied by the Debtor pursuant to its terms or the Debtor selling or again refinancing its Property.

5.4     **Sale of the Property:**

(a) A broker retained by the Debtor shall market and attempt to negotiate a sale of the Property at a comparable market rate with the Debtor's approval.   The Debtor may elect to have a broker conduct an Auction of the Property at a minimum bid in accordance with the Bid Procedures. Thereafter, the Debtor shall consummate the sale of the Property to the Successful Bidder consistent with the Bid Procedures, the Sale Approval Order, and this Plan. The Bid Procedures shall provide that the Debtor (or their affiliate(s) or designee(s)) may make a credit bid up to the full Allowed amount of the Secured Creditor's Claim, although it is under no obligation to do so. The Broker's fees shall be paid from a buyer's premium or, in the event of a successful Credit Bid by a Secured Creditor Lender, in an amount provided in the Broker Retention Order.

(b) The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code that, among other things: (A) authorizes the Debtor to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Property to the Successful Bidder and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of this

Plan; (B) authorizes and directs the Debtor to transfer all Cash on hand to the Disbursing Agent immediately, which Cash shall become part of the Available Cash; and (C) directs the Disbursing Agent, on or about the Effective Date, to make the payments required under this Plan to be made on or about the Effective Date. Pursuant to Section 1146(a) of the Bankruptcy Code, the deed conveying the Property in accordance with the Sale and any deed further conveying the property with two years following the Sale by the Successful Bidder or its affiliate or designee shall be an instrument of transfer in connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Taxes, mortgage recording tax or similar tax, and, to the extent provided by Section 1146(a) of the Bankruptcy Code, if any, shall not be subject to any state, local or federal law imposing sales tax. All proceeds of the Auction (after applicable expenses) shall be deposited with the Distribution Agent and become Available Cash.

5.5 **Funding:** Except as set forth elsewhere in this Plan, all payments required to be made under this Plan shall be made by the Disbursing Agent in accordance with the terms of this Plan from Available Cash. In the event that the Available Cash on the Effective Date is insufficient to fully fund distributions under the Plan required to be made on the Effective Date any shortfall will be funded with the Plan Funds on or before the Effective Date, with any such shortfall funding constituting an Administrative Claim against Debtor's Estate payable from Available Cash after the Effective Date such shortfall shall be funded through the funds to be provided by the Debtor.

5.6 **Execution of Documents:** On the Effective Date, Debtor shall execute, release, and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of this Plan. Pursuant to Sections 105, 1141(c), and 1142(b) of the Bankruptcy Code, Debtor shall be authorized to execute any estoppel certificate, or any notice of satisfaction, release, or discharge of any Lien, Claim, or encumbrance not expressly preserved in this Plan and deliver such notices to any and all federal, state, and local governmental agencies or departments for filing and recordation and the Confirmation Order shall expressly so provide. Upon the entry of the Confirmation Order by the Bankruptcy Court (but subject to the occurrence of the Effective Date), and except as may otherwise be provided herein, any treatment or actions provided for or contemplated under the Plan shall be deemed to be authorized and approved without any further order or approval of the Bankruptcy Court. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court but subject to the terms of the Plan to take whatever action is necessary or proper to consummate and carry out the Plan, to consummate any transaction provided for herein, and to effectuate the Distributions provided for hereunder.

5.7 **Filing of Documents:** Pursuant to Sections 105, 1141(c), and 1142(b) of the Bankruptcy Code, each and every federal, state, and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement, and consummate the transactions contemplated by this Plan, and any and all notices of satisfaction, release, or discharge or assignment of any Lien, Claim, or encumbrance not expressly preserved by the Plan.

5.8     On the Effective Date or at such other time as agreed, a cash distribution shall be made to Holders of Allowed Administrative Claims, the Holder of Allowed Class 1 Secured Claims, the Holder of Allowed Tax Priority Claims, and the holders of Allowed Unsecured Claims. In the event an order has not been entered fixing the fees of a Professional Person and/or there is a dispute concerning fees of a Professional Person, then the total fees requested (if a hearing has not been held) or the disputed fees in question shall be placed in an escrow account to be kept by the Debtor in trust for the Professional Person and shall remain in such account until there is a resolution of the Professional Persons' Administrative Claim, at which time such Professional Person shall be paid with interest earned thereon. The Debtor shall appoint attorneys Jacobs P.C. or another fiduciary entity to act as a Disbursing Agent and shall be responsible for disbursement of the payments to the creditors in this Plan.   The Disbursing Agent shall not be required to post a bond.

5.9     **Setoffs:** The Debtor may, but shall not be required to, set off against any Claim and the Distributions to be made pursuant to this Plan in respect of such Claim, any claims of any nature whatsoever which the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim the Debtor may have against such Holder. Prior to any setoff, the Debtor shall provide fourteen days written notice and the creditor shall have the right to object.

5.10    **Corporate Action:** Upon entry of the Confirmation Order, all actions contemplated by this Plan shall be authorized and approved in all respects (subject to the provisions of this Plan), including without limitation, the execution, delivery, and performance of all agreements required, contemplated or necessary to implement this Plan. On the Effective

Date, the appropriate officers and directors of the Debtor are authorized and directed to execute and deliver the agreements, documents and instruments contemplated by this Plan in the name of and on behalf of the Debtor. Pursuant to Section 808 of the New York Business Corporation Law, actions taken pursuant to a confirmed plan of reorganization of a New York corporation have the same effect as if taken by unanimous action of the directors and shareholders of such corporations.

5.11   The Debtor, bankruptcy Estate, purchaser of the Debtor's Property and/or person providing refinancing as provided for herein shall be exempt, as an "Exempt Tax" under Section 1.32 above, from any and all stamp, transfer, mortgage recording, and other taxes to which the exemption contained in Bankruptcy Code § 1146(a) is applicable, including, without limitation, the New York State Real Estate Transfer Tax and Mortgage Recording Tax, Mansion Tax, and New York State and any County Sales Tax, and the City of New York Transfer and Mortgage Recording Tax, relating to the transactions contemplated in the treatment set forth in Classes 1 and 2 of the Plan and this Article V, including, but not limited to the: I) purchaser's financing and/or mortgage to: a.) purchase the Property, or b.) refinance the Property, if the Purchaser purchases the Property for cash; and II) Debtor, within twenty-four (24) months of the Plan's Effective Date: a.) obtaining refinancing to satisfy the Funder's Refinancing, and/or b.) sale of the Property.

5.12   The Debtor retains and reserves the right to recover any and all recoveries under chapter 5 of the Bankruptcy Code which will remain property of the Debtor's Estate, and to pursue any and all pre and post-petition causes of action it may have against any party. Any such actions will be commenced within 60 days of the Plan's Effective Date.

5.13   In the event there are any monies remaining with the Debtor as the result of undistributed funds or funds which are returned, such funds shall revert and become the Reorganized Debtor's property, free and clear of any and all Claims and encumbrances of the Claims which are provided for as provided in this Plan.

5.14    The Debtor shall continue to manage its properties and ventures in implementing the Plan until and after the Effective Date.

5.15    The Reorganized Debtor may, at its own election, transfer, convey and/or refinance its business and/or interests in its business or properties.

5.16    In the event that the Debtor and/or Reorganized Debtor makes a transfer of property or refinance a property as provided in this Plan which transfer or refinance might otherwise be subject to a stamp tax or similar tax, including but not limited to a transfer tax or recording tax, such transfers and documents shall not be subject to such tax to the fullest extent permitted by 11 U.S.C. § 1146.

5.17    The Plan shall be deemed to be substantially consummated upon the making of a distribution to any class of Creditors, pursuant to the Plan.

5.18    The Debtor may alter its capital structure to accommodate new investors.


## ARTICLE VI

## PROVISIONS CONCERNING DISTRIBUTIONS

6.1.    **Time of Distributions Under the Plan:** Payments and distributions to be made by the Debtor on the Effective Date pursuant to this Plan shall be made on such date, or as soon thereafter as is practicable, except as otherwise provided for in this Plan, or as may be ordered by the Court.

6.2.    **Payment Dates:** Whenever any payment or distribution to be made as provided in this Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business Day.

6.3.    **Manner of Payments Under the Plan:** Payments to be made pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

6.4.    **Fractional Cents:** Any other provision of this Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a

cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (up or down).

6.5.  **Unclaimed Property:** Except as otherwise provided herein, in the event and at such time as any distribution as provided in this Plan becomes Unclaimed Property, then the Person to which such distribution was to have been made shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim in respect of which such distribution was to have been made shall be treated as a Disallowed Claim not subject to Bankruptcy Code § 502(j). In this regard, distributions to Claim Holders entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Court or if no proof of claim is filed, on the schedules filed by the Debtors, or to such other address as may be designated by a Claim Holder.

6.6.  **Disputed Payments or Distributions:** In the event of any dispute between or among Claim Holders (including the Person or Persons asserting the right to receive the disputed payment or distribution) as to the right of any Person to receive or retain any payment or distribution to be made to such Person as provided in this Plan, the Debtors may, in lieu of making such payment or distribution to such Person, make it instead into an escrow account or to a disbursing agent, for payment or distribution as ordered by a court of competent jurisdiction or as the interested parties to such dispute may agree among themselves.

6.7.  **Collection and Disbursing Agent:** The Debtors shall act as collection agent for the marshaling of the Debtor's assets and disbursing agent for the payments to be made as provided in this Plan. The Debtors may delegate these responsibilities to its attorneys. Neither the Debtors nor its attorneys will obtain a bond for serving as disbursing agent.

6.8  **Deposit of Funds:** All that is to be distributed as provided in this Plan shall be placed in a separate disbursement account. That disbursement account shall be maintained at a depository in the Eastern District of New York which is authorized by the Office of the

United States Trustee.

## ARTICLE VII

## <u>PROVISIONS CONCERNING DISCHARGE AND PROPERTY</u>

7.1.    <u>**Release of Claims:**</u> Except as otherwise provided in this Plan and the Confirmation Order, the rights afforded in this Plan shall be in exchange for and in complete satisfaction and release of all Claims of any nature whatsoever, including any interest accrued thereon from and after the Petition Date, against the Debtor, its Estate, or any of its assets or properties.

7.2.    <u>**Vesting of Property in the Debtor:**</u> Except as otherwise provided by this Plan, upon the Confirmation Date, title to all assets dealt with by this Plan shall pass to the Debtor free and clear of all liens, Claims and/or encumbrances in accordance with Bankruptcy Code § 1141.

7.3.    To the extent permitted by applicable law, if the Debtor and its agents and professionals act in good faith, they shall not be liable to any Claimant or holder of an Equity Security Interest, or any party with respect to any action, forbearance from action, decision, or exercise of discretion taken during the period from the Petition Date to the Effective Date in connection with a.) the Debtor's operations; b.) the proposal or implementation of any of the transactions provided for or contemplated as provided in this Plan; or c.) the administration of the Bankruptcy Case or this Plan or the distribution to be made pursuant to this Plan, other than for willful misconduct, gross negligence, breach of fiduciary duty, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or *ultra vires* acts. The Debtor and its respective affiliates, representatives, attorneys, accountants, financial advisors, and agents, may rely on the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor, pursuant to an order of the Court, and such reliance shall conclusively establish

good faith. Any objection to this Section by any Claimant or holder of an Equity Security Interest shall be filed by the deadline established by the Bankruptcy Court for objecting to Confirmation of this Plan or shall be waived. Nothing in this Plan shall limit the liability of the Debtor's Professional Persons to the Debtor for malpractice pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.

7.4 **Exculpation:** In consideration of the Distributions under the Plan, upon the Effective Date, each Holder of a Claim or Interest will be deemed to have released the Debtor, and each of its members, officers, agents, consultants, attorneys, independent accountants, advisors, Professionals, financial advisors, investment bankers and employees (in such capacity), employed by the Debtor from and after the Filing Date from any and all Causes of Action, other than a right to pursue a claim based on any criminal conduct negligence or willful misconduct, including any breach of fiduciary duty constituting gross negligence or willful misconduct arising out of actions or omissions during the administration of the Chapter 11 Case, the administration of the Estate and/or the Post-confirmation Estate, or the Distribution of any Property or Post-confirmation Estate Assets pursuant to the Plan

7.04 **Discharge:** a.) If the Debtor does the Refinance, it shall be entitled to and receive the discharge provided by Bankruptcy Code § 1141(d) to the fullest extent. b.) If the Debtor sells the Property, the Debtor, the Reorganized Debtor and its property will be entitled to and receive the injunction and other protections provided by this Plan.


## ARTICLE VIII

## EFFECT OF THE PLAN ON CLAIMS AND EXISTING INTERESTS

8.1. **Injunction:** In implementing the release provided for herein, except as otherwise expressly provided in this Plan (including obligations in respect of Claims as at the Effective Date) all Persons who have held, hold or may hold Claims or Interests against

the Debtor are permanently enjoined on and after the Effective Date: (i) from commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind with respect to any such Claim or Interests against the Debtor or the property of the Debtor with respect to any such Claim or Interests, (ii) from the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor or the property of the Debtor, (iii) from creating, perfecting or enforcing, directly or indirectly, any encumbrance of any kind against the Debtor, or against the property of the Debtor, with respect to any such Claim or Interests, (iv) from asserting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, or against the property of the Debtor with respect to any such Claim or Interests solely to the extent that such conduct directly or indirectly interferes with the performance and consummation of the Plan. Nothing contained in this Section shall prohibit the holder of a timely filed Claim to which the Debtor has timely filed an objection from litigating their right to seek to have such Claim declared an Allowed Claim. The Confirmation Order shall make provision for this injunction.

## ARTICLE IX
## RELEASES AND TERMINATION

9.1.    **Rights if Plan not Confirmed:** If Confirmation of this Plan does not occur, this Plan shall be deemed null and void, and in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor; nor in such event shall any statement contained in this Plan constitute an admission of any fact by the Debtor in any further proceedings involving the Debtor.

# ARTICLE X

## REJECTION AND ASSUMPTION OF EXECUTORY CONTRACTS

10.1 **All pre-petition Executory Contracts of the Debtor which have not been assumed and assigned or expired, pursuant to their terms, or were rejected during the Bankruptcy Case:** If the Property is sold, all extant Executory Contracts related to the Property are being rejected, pursuant to Bankruptcy Code § 365. If the Property is refinanced, all Executory Contracts related to the Property are being assumed, pursuant to Bankruptcy Code § 365. All executory contracts unrelated to the Property are presently being assumed, pursuant to Bankruptcy Code § 365.

# ARTICLE XI

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

11.1 **Time Limit for Objections to Claims:** Objections to Claims shall be filed by the Debtor and served upon each holder of each of the Claims to which objections are made not later than sixty (60) days after the Confirmation Date or within such other additional time period as may be fixed by the Court, except that unless otherwise extended by order of the Court, the Debtor may file an objection to the allowance of any Claim filed resulting from the rejection of an Executory Contract within the later of ten (10) days following the Effective Date or thirty (30) days after the filing of such Claim and service of a copy of such Claim upon the Debtor as provided for in any order rejecting such Executory Contract.

11.2. **Resolution of Disputed Claims:** Unless otherwise ordered by the Court, the Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claims, each in its sole discretion, without notice to any party in interest.

11.3 **Payments:** Payments and distributions to each holder of a Disputed Claim that ultimately

becomes an Allowed Claim shall be made in accordance with the provisions of this Plan with respect to the Class of Creditors to which the holder of such Allowed Claim belongs. Such payments and distributions shall be made as soon as practicable after the date on which the order allowing such Claim becomes a Final order but not later than thirty (30) days thereafter. Payments made in accordance with this Article shall not include interest on the amount of such payment from the date on which the holder of the Allowed Claim would have been entitled to receive payment if their Claim had not been a Disputed Claim.

11.4 **Reserve Fund:** In the event that an objection to a Claim is filed by the Debtor, and any such objection is unresolved as of the Confirmation Date of this Plan or afterward, the Debtor shall reserve in the Debtor' Estate a sum not less than the principal amount required to pay the Disputed Claim under the Plan if said Claim was proved and allowed, in full, and deposit that amount in the Reserve Fund which shall be maintained by the Reorganized Debtor in a separate bank account of the Reorganized Debtor' choice or at a depository within the Eastern District of New York which is authorized by the Office of the United States Trustee. The Reorganized Debtor shall be permitted to invest all or a portion of the Reserve Fund in a separate FDIC insured so-called interest bearing money market or other account pending resolution of the Disputed Claim. Disputed Claims that are litigated to judgment, settled or withdrawn shall be satisfied from the Reserve Fund. Payments from the Reserve Fund shall be made at the time, and in the manner approved by the Bankruptcy Court, and after the matter is no longer subject to appeal. Should the Reserve Fund exceed the full amount of a Disputed Claim or Claims, any excess will be returned to the Reorganized Debtor. The Reserve Fund shall not be subject to attachment, levy, seizure, sequestration or other remedies by any creditor in aid of enforcement of any judgment claim, including post-petition judgments other than the Confirmation Order. The Debtor and Reorganized Debtor may have recourse to the Reserve Fund for the

purpose of satisfying any judgment it obtains against a Claimant having an interest in funds held in the Reserve Fund. Disputed Claims shall not accrue interest.

11. 5   **Venue:** The Debtor, in its sole discretion may: a.) file and prosecute an objection to a Claim in this Court, b.) object to a claim by resuming or continuing a pre-petition litigation commenced in another venue, and/or c.) continue its litigation captioned *Green Point Management Systems, LLC v. Howard Rosengarten & Associates LLC et al.*, (Adv. Proc. No. 8-23-08037-las) and *Green Point Management Systems, LLC v. Gerald Rosengarten*, (Adv. Proc. No. 8-23-08035-las).

## ARTICLE XII

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

12.1.   **Conditions to Occurrence of the Effective Date:** The entry of the Confirmation Order, in form and substance reasonably satisfactory to the Debtor, becoming a Final Order is the condition precedent to the occurrence of the Effective Date. However, the Debtor may, in its sole discretion, waive the condition that the Confirmation Order become a Final Order.

## ARTICLE XIII

## ADMINISTRATIVE PROVISIONS

13.1.   **Further Documents and Action:** On or before the Effective Date, the Debtor and/or Reorganized Debtor shall execute, and is authorized to file with the Bankruptcy Court, such agreements and other documents, and take or cause to be taken such action, as may be necessary or appropriate to effect and further evidence the terms and conditions of this Plan.

13.2.   **Automatic Stay:** The Debtor and all of the Debtor's property and Estate shall, except as otherwise agreed to by the Debtor provided by this Plan, be subject to the exclusive

jurisdiction of the Bankruptcy Court until such time as all such property has been distributed in accordance with this Plan. Until such time as all such property has been distributed in accordance with this Plan, all such property shall be protected by the automatic stay under Bankruptcy Code § 362(a) and by a stay or injunction of the Bankruptcy Court under Bankruptcy Code § 105 that shall be the equivalent of the automatic stay under Bankruptcy Code § 362 during the pendency of the Bankruptcy Case.

**ARTICLE XIV**

**<u>RETENTION OF JURISDICTION</u>**

14.1.  **<u>Retention of Jurisdiction:</u>** Following the Confirmation Date, the Court shall retain jurisdiction of this proceeding and of all matters arising under or out of the Bankruptcy Case, including, without limitation, the following purposes:

14.1.1  except for objections to claims which the Debtor chooses to prosecute in the forum where a litigation was commenced pre-petition, to hear and determine any objections to the allowance of Claims;

14.1.2  to determine any and all applications for the retention of and compensation for Professional Persons and similar fees (Professional Persons employed by the Debtor's Estate after the Effective Date may be paid pursuant to an invoice if there are no objections to the invoice within ten (10) days after it is served on any parties requesting notice pursuant to Bankruptcy Rule 2002(I) by regular mail; provided, that any objection to such an invoice will be heard by the Bankruptcy Court);

14.1.3  except for objections to claims which the Debtor chooses to prosecute in the forum where a litigation was commenced pre-petition, to determine the value of and extent of Secured Claims;

14.1.4  to determine any and all applications, adversary proceedings, and contested or litigated matters properly before the Court and pending on the Confirmation Date or brought after the Confirmation Date;

14.1.5  to modify this Plan pursuant to § 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistency in the Confirmation order to the extent authorized by the Bankruptcy Code;

14.1.6  to hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of this Plan, the Confirmation order, and any other documents executed and delivered in connection with this Plan;

14.1.7  to hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Court in the Bankruptcy Case;

14.1.8  to hear and determine any and all controversies and disputes arising under, or in connection with, this Plan;

14.1.9  to adjudicate all controversies concerning the classification of any Claim;

14.1.10 except for objections to claims which the Debtor chooses to prosecute in the forum where a litigation was commenced pre-petition, to liquidate damages in connection with any disputed, contingent or unliquidated Claims;

14.1.11 to adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof;

14.1.12 to adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the Bankruptcy Case;

14.1.13 to recover all assets and properties of the Debtor wherever located, including the prosecution and adjudication of all causes of action available to the Debtor as at the Confirmation Date.

14.1.14 except for objections to claims which the Debtor chooses to prosecute in the forum where a litigation was commenced pre-petition, to determine all questions and disputes regarding recovery of and entitlement to the Debtor's assets and determine all claims and disputes between the Debtor, and any other Person, whether or not subject to an action pending as of the Confirmation Date;

14.1.15 to enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary or appropriate;

14.1.16 to enter an order or final decree closing and terminating the Bankruptcy Case; and

14.1.17 to make such orders as are necessary or appropriate to carry out the provisions of this Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof and/or the Confirmation order.

## ARTICLE XV
## GENERAL PROVISIONS

15.1. **Modification of this Plan:** The Debtor reserves the right, in accordance with the Bankruptcy Code, to seek to amend or modify this Plan before or after the Confirmation Date. Any substantive post-Confirmation modification of this Plan shall be subject to notice and hearing compliant with the Bankruptcy Code and Bankruptcy Rules.

15.2. **Notices:** All notices, requests, elections or demands in connection with this Plan including any change of address of any Claimant for the purposes of receiving distributions as provided in this Plan and forfeiting same hereunder shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent certified mail, postage

prepaid, by registered or return receipt requested, and if sent to the Debtor, addressed to:

Green Point Management Systems, LLC
293 Bayport Avenue
Bayport, NY 11705

and to

Leo Jacobs, Esq.,
Jacobs P.C.
595 Madison Avenue – 39th Floor
New York, NY 10022

All notices and requests to Claimants of any Class shall be sent to them at their last known address. The Debtor, and any Claimant of any Class, may designate in writing any other address for purposes of this Section 15.2, which designation shall be effective upon receipt.

15.3. **Headings:** The headings used in this Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the provisions of this Plan.

15.4. **Severability:** Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Plan.

15.5. **Governing Law:** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising as provided in this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York.

15.6. **Successors and Assigns:** The rights and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

15.7. **Reservation of Rights:** Nothing contained herein shall prohibit the Debtor from prosecuting or defending any of its rights as may exist on its own behalf.

15.8 **Voidable Transfers:** The time for the Debtor to commence any actions to enforce rights

under or relating to Bankruptcy Code sections 543, 544, 547, 548, 550, 553, extends to and including sixty days after the Effective Date of the Plan.

15.9    **United States Trustee's Fees:** Quarterly fees which are payable to the Office of the United States Trustee, pursuant to 28 U.S.C. § 1930 and any applicable interest thereon which have accrued but not been paid prior to the Confirmation of the Plan shall be paid by the Debtor not later than the Effective Date of the Plan. Quarterly fees which are payable to the Office of the United States Trustee, pursuant to 28 U.S.C. § 1930 and any applicable interest thereon which accrue after the Confirmation of the Plan shall be paid by the Reorganized Debtor until the earlier of the conversion of this case to chapter 7, its dismissal, or the entry of a final decree closing this case.

16.10   **Post-Confirmation Operating Reports:** The Debtor and/or Reorganized Debtor shall continue to be responsible for the preparation and filing of operating reports on or before each January 15th, April 15th, July 15th, and October 15th from the Confirmation Date of the Plan the earlier of the conversion of this case to chapter 7, its dismissal, or the entry of a final decree closing this case. The Confirmation Order shall provide that the Reorganized Debtor shall be responsible for filing the required post-confirmation operating reports and payment of the quarterly fees and any applicable interest thereon to the United States Trustee, pursuant to 28 U.S.C. § 1930. Within fourteen (14) days following the distribution of any deposit required by this Plan or, if no deposit was required, upon the payment of the first distribution required by this Plan, the Debtor shall file a closing report in accordance with Local Bankruptcy Rule 3022-1 and an application for a final decree.

Dated: New York, NY
September 6, 2023

GREEN POINT MANAGEMENT
SYSTEMS LLC

By: /s/ Adam Rosen
        Adam Rosen
        Managing Member

JACOBS P.C.
*Attorneys for the Debtor Green Point*
*Management Systems, LLC*
595 Madison Avenue – 39th Floor
New York, New York 10022
212-229-0476

By:  /s/ Leo Jacobs
        Leo Jacobs, Esq.