**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

In re:                                                    Case No.: 23-71078-LAS

**GREEN POINT MANAGEMENT SYSTEMS, LLC**        Chapter 11

                                        **Debtor.**
-------------------------------------------------------------------X

=========================================================

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OF THE PLAN.**

**ACCEPTANCES MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT**

**HAS BEEN APPROVED BY THE BANKRUPTCY COURT.   THE ANNEXED**

**DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT.**

=========================================================

**DISCLOSURE STATEMENT, PURSUANT TO BANKRUPTCY**
**CODE SECTION 1125, FOR GREEN POINT MANAGEMENT**
**SYSTEMS, LLC'S PLAN OF REORGANIZATION**

## I. <u>INTRODUCTION</u>

Green Point Management Systems, LLC, Debtor and Debtor-in-Possession ("Green Point"

or the "Debtor), prepared this disclosure statement (the "Disclosure Statement") pursuant to

Bankruptcy Code Section 1125,[1] in this Bankruptcy Case and in connection with the solicitation

of acceptances or rejections of the Debtor's Plan of Reorganization, dated September 6, 2023

(the "Plan").   The Plan was filed on September 6, 2023.

A complete copy of the Plan is annexed to this Disclosure Statement as Exhibit A."

---

[1] Capitalized or abbreviated terms contained in this Disclosure Statement shall have the same meaning as ascribed to them in Article I of the Plan, or elsewhere therein, unless otherwise defined in this Disclosure Statement.

The purpose of this Disclosure Statement is to provide Green Point's Creditors and Interest Holders with adequate information to enable them to make an informed judgment about the acceptability of the Plan. This Disclosure Statement aims to give Creditors and Interest Holders sufficient information, as far as it is reasonably practicable for the Debtor to provide, that would allow a hypothetical reasonable investor typical of the holders of Claims and Interests in the classes Impaired under the Plan to make an informed judgment about whether to accept or reject the Plan.

The provisions of the Plan are binding on all Creditors and Interest Holders, therefore, please read the Plan and this Disclosure Statement carefully.

**APPROVAL OF THIS DISCLOSURE STATEMENT BY THE COURT DOES NOT AMOUNT TO A RULING BY THE COURT ON THE FAIRNESS OR MERITS OF THE PLAN.**

**NO STATEMENT, INFORMATION OR REPRESENTATION CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS, PROFIT OR FINANCIAL CONDITION) IS AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE ACCEPTANCES OF THE PLAN WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION AND ANY SUCH ADDITIONAL REPRESENTATION OR INDUCEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS THE COURT MAY DEEM APPROPRIATE. THE FINANCIAL INFORMATION CONTAINED HEREIN**

HAS NOT BEEN SUBJECT TO AN AUDIT. THE DEBTOR IS UNABLE TO WARRANT AND REPRESENT THE ACCURACY OF THE INFORMATION CONTAINED HEREIN ALTHOUGH EVERY EFFORT HAS BEEN MADE TO INSURE ITS ACCURACY.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY AN ORDER OF THE COURT, THE HONORABLE LOUIS A. SCARCELLA, UNITED STATES BANKRUPTCY JUDGE.   THE COURT HAS NOT DETERMINED WHETHER THE PLAN MEETS THE REQUIREMENTS OF THE BANKRUPTCY CODE FOR CONFIRMATION NOR IS THIS DISCLOSURE STATEMENT OR THE ORDER APPROVING IT TO BE CONSTRUED AS AN APPROVAL OR ENDORSEMENT OF THE FAIRNESS OR MERITS OF THE PLAN BY THE COURT.

ALL PARTIES ENTITLED TO VOTE ON THE PLAN ARE URGED TO REVIEW IN FULL THE PLAN AND THIS DISCLOSURE STATEMENT TOGETHER WITH ALL EXHIBITS ATTACHED THERETO, PRIOR TO VOTING ON THE PLAN, AND MAY DESIRE TO CONSULT LEGAL COUNSEL PRIOR TO VOTING TO ENSURE COMPLETE UNDERSTANDING OF THEIR TREATMENT UNDER THE PLAN. THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF CREDITORS AND INTEREST HOLDERS OF THE DEBTOR TO ENABLE THEM TO MAKE AN INFORMED DECISION ABOUT THE PLAN.

EACH CREDITOR AND INTEREST HOLDER IS URGED TO CONSULT ITS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO IT UNDER FEDERAL AND APPLICABLE STATE, LOCAL AND FOREIGN TAX LAWS. THE

**DEBTOR MAKES NO WARRANTIES OR REPRESENTATIONS REGARDING THE TAX IMPACT OF THE PLAN ON ANY CREDITOR OR INTEREST HOLDER.**

### A. <u>Confirmation Hearing</u>

The court has scheduled a hearing (the "Hearing") to consider Confirmation of the Plan on October _____ , 2023 at _____ _.m., at the United States Bankruptcy Court, Eastern District of New York, 290 Federal Plaza, Central Islip, New York 11722.

### B. <u>Objections to Confirmation</u>

Objections to confirmation of the Plan, if any, must be in writing and must identify the objecting party and the nature of its interest in the Bankruptcy Case and must set forth in detail the nature and basis of the objection. Objections must be filed with the Clerk of the Court with the ECF system, with a copy to the Chambers of Hon. Louis A. Scarcella and served upon the following no later than October _____, 2023 at 5:00 P.M.:

Leo Jacobs, Esq.
Jacobs P.C.
595 Madison Avenue, 39th floor
New York, NY 10022

Office of the United States Trustee,
560 Federal Plaza
Central Islip, NY 11722
 attn: Christine H. Black, Esq.

### C. <u>Overview of Voting on the Plan</u>

Holders of Claims in Classes 1, 2, 3, 4, 5, and Class 7 Equity Security Interest holders are deemed to have accepted the Plan.   Their respective Allowed Claims or Interests are not impaired. Therefore, they are not entitled to vote under the Plan. In accordance with Bankruptcy Code section 1123(a).

Holders of Claims in Class 7 are impaired. They are entitled to vote to accept or reject the Plan. They are being provided a ballot for that purpose.

Allowed Administrative Claims are not being classified under the Plan. The Plan provides that these Claims are to be paid in full on the distribution date.

**D. General Description of Treatment of Claims and Interests**

Described in detail elsewhere in this disclosure Statement and in the Plan is a description of the Plan's classification of Claims and Existing Interests, the Distributions and treatment afforded to Holder of such claims and Interest Holders upon the occurrence of the Effective Date and the consequences of the proposed Reorganization of the Debtor. THE FOLLOWING IS A BRIEF SUMMARY OF THE TREATMENT AFFORDED TO CLAIMS AND CLASSES BY THE PLAN. THIS SUMMARY IS PROVIDED FOR CONVENIENCE PURPOSES ONLY AND IS ABSOLUTELY QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE FULL TEXT OF THE PLAN. YOU ARE URGED TO READ THE ACTUAL TEXT OF THE PLAN TO DETERMINE THE TREATMENT GIVEN TO THE CLASS WHICH ENCOMPASSES YOUR TYPE OF CLAIM OR INTEREST.

| Class | Description | Distribution & Treatment |
|-------|-------------|--------------------------|
| No Class | Administrative Claims | Allowed Administration Claims will be paid in full in cash on the Effective Date or entry of an order, if required, or as otherwise agreed to between the Debtor and the holder of such Claim. |
| Class 1 | Secured Claim of Columbia Capital, Co. ("Columbia"), secured by the first mortgage on the Debtor's Real Property | The holder of an Allowed Class 1 Claim shall be paid in full on the Effective Date. Unimpaired. |
| Class 2 | All Other Secured Creditors | Allowed Class 2 Claims shall be paid in full on the Effective Date. Unimpaired. |

| Class 3 | All Allowed Claims Entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)). | Allowed Class 3 Claims shall be paid in full on the Effective Date. Unimpaired. |
|---------|------------------------------------------------|----------------------------------|
| Class 4 | The Claims of Taxing Authorities | Allowed Class 4 Claims shall be paid in full on the Effective Date. Unimpaired. |
| Class 5 | General Unsecured Claims | The holders of Allowed Class 5 Claims shall be paid in full on the Effective Date. Unimpaired. |
| Class 6 | Unsecured Insider Creditors | Allowed Claims of Class 6 Creditors will be paid in full through periodic payments when available, provided: a.) the Claims of Classes 1-5 are paid in full; and b.) there are sufficient net revenues to make the payment. Impaired. |
| Class 7 | Equity Security Interest Holders | Allowed Class 7 Equity Security Interest holders will retain their interest in the Debtor. Unimpaired. |

Allowed Administrative Claims are comprised of the claim of Jacobs P.C., counsel to the Debtor and Debtor-in-Possession and Northgate Real Estate Group ("Northgate"), proposed real estate broker for the Debtor. Jacobs P.C. expects to apply for compensation of approximately $_____ with expenses of approximately $_____.   Northgate expects to apply for total compensation of approximately $_____ with expenses of approximately $_____.

### E. Plan Alternatives

The Debtor believes that the Plan provides the best means for the distribution of the proceeds of the sale or refinancing of the Debtor's assets.   The Plan provides the most expeditious and efficient means of paying Creditors.    A Chapter 7 case could reduce the

payment to unsecured creditors because of the additional administrative costs and the effect of the Property's forced sale. It would also delay the payment to Creditors for their Allowed Claims. A chapter 7 case also raises the specter of "claw-back" litigation to recover pre-petition payments to creditors, which the Debtor does not, otherwise, anticipate asserting.

## II. EVENTS PRECEDING THE FILING

### A. History of the Debtor

Green Point was formed as a New York limited liability company on April 23, 2015. Green Point's primary asset is unit 106 located at 231 Norman Avenue, Brooklyn, New York.

Prior to filing for bankruptcy, Green Point engaged in project management and dispute resolution matters, including managing a property located at 88 University Place in New York City for two years, the designing and building a single family home in Southampton, Long Island, the strategizing, creating and developing what became one of Long Island's largest, most profitable, privately held solar farms. Green Point implemented, guided and otherwise managed the solar farm project for over eight years. Among other accomplishments, Green Point successfully drove the nearly impossible task of obtaining a permit for operating the solar farm project.

### B. Columbia Capital Co. Loan

Green Point borrowed $200,000.00 from Columbia Capital Co. ("Columbia"), collateralized by a mortgage on the Property, in order to pay for the services of contractors and subcontractors. Interest has accrued on this amount. Green Point may secure a new loan to pay off the loan from Columbia.

## C. The Foreclosure Begins

In 2020, the Debtor stopped making payments on the loan from Columbia. Columbia, in turn, scheduled an auction of the Property for March 30, 2023.

## D. This Case Begins

On March 29, 2023, Green Point filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

## II. EVENTS IN THIS CASE

## A. The Debtor's Motion to Approve the Access Agreement and Action against the Board

After this Case was filed, the Debtor sought an order approving the agreement between Green Point and the Board of 231 Norman Avenue, Brooklyn, NY (which is where the Debtor's Property is located) (the "Board"). That agreement contemplates that the Board will have access to the Debtor's Property in order to, inter alia, perform certain restoration work in exchange for a fee to be paid to the Debtor: $5,000 for attorney's fees incurred in connection with the execution of the agreement, $3,400 per month for the first three months, $4,400 for the next three months, and $7,000 per month for each month thereafter. The Court issued an order authorizing the Debtor to perform under this access agreement. The Debtor has performed all of its obligations thereunder.

In connection therewith, in July 2023, the Debtor received $8,400 for attorney's fees and the first month's access. The Debtor has not received payment since then notwithstanding that the Board continues to have access to the Property. The Debtor anticipates moving to enforce

the Access Agreement to recover unpaid fees and to cure the breaches, protect the Property, and recover unpaid fees.

**B.   Cash Collateral Order Negotiations**

Notwithstanding several overtures by Debtor's counsel to counsel for Columbia Capital Co., the parties were unable to settle on an order authorizing the use of cash collateral. Columbia's counsel indicated it was waiting for the Court to rule upon the U.S. Trustee's motion to dismiss or convert the Case (discussed *infra*).

**C.   Retaining Professionals**

The Debtor filed a motion to retain Jacobs P.C, as its attorneys.   After Jacobs P.C. resolved issues which the U.S Trustee had with the application, the order approving the retention was entered on July 19, 2023.

The Debtor is filing an application to employ Northgate as the Debtor's real estate broker to sell its Property.

**D.   Bar Date Order**

On June 29, 2023, the Court granted the Debtor's request for an order setting a deadline and procedures for filing proofs of claim and notice thereof.   For general claims, that deadline passed on August 15, 2023.   For government claims, that deadline is September 25, 2023.

**E.   Monthly Operating Reports**

Green Point is required to file monthly operating reports.   Since the order for relief, six reporting periods have passed.   The Debtor has filed or is filing the required operating reports. The Debtor expects to continue complying with this requirement.

**F. Removal of Certain Actions to Bankruptcy Court**

On the Petition Date, the Debtor was a plaintiff in two actions:   *Greenpoint Management Systems, LLC et al v. Howard Rosengarten & Associates LLC et al* (Index No. 605677/2023, Supreme Court State of NY-Suffolk County) (the "Howard Rosengarten Action") and *Greenpoint Management Systems, LLC v. Gerald Rosengarten* (Index No. 208069/2022) (the "Gerald Rosengarten Action", together, the "Actions").

These actions relate to, and chiefly concern, efforts to collect funds due the Debtor in connection with services related to the solar farms it helped develop.

The Debtor removed these actions from the state court to the Bankruptcy Court in order to take advantage of its superior mediation program.   *See* Adversary Proceeding Nos. 23-8035 and 23-8037.   The parties agreed to enter into mediation, but the Court tabled the request pending the U.S. Trustee's motion to dismiss the Case.

**G. The U.S. Trustee's Motion to Dismiss the Case**

The U.S. Trustee has filed a motion to dismiss the Case or, in the alternative, to have it converted to a chapter 7 liquidation.   That motion is not yet decided; it has been fully briefed and is scheduled to be heard by the Court on September 7, 2023.

## IV. DESCRIPTION OF THE AVAILABLE ASSETS AND THEIR VALUE
## DESCRIPTION OF THE LIABILITIES

The following is a description of the Debtor's available assets and their value:

### The Debtor's Assets Are

Property (231 Norman Avenue) - $550,000

Access Agreement - $70,000

Cash - $8,800

Equipment - $80,000[2]

Causes of Action - $10,620,000[3]

Accounts receivable pre-petition (excluding the causes of action) - $0

Accounts receivable post-petition (excluding causes of action) - $3,400

### The Debtor's Liabilities are:

1) Secured Claims (Real estate mortgages) - $362,933.19[4]

2) Priority tax claim-$4,644[6]

---

[2] In connection with fulfilling its obligations under the Access Agreement, including relocating the construction materials previously stored in the Property, the Debtor obtained an informal appraisal of those materials at $80,000. The Debtor intends to sell these materials, subject to Court approval.

[3] This is an estimate of the possible recoveries from the Actions and the action against the Board.

[4] This is based on Columbia's filed proof of claim. The Debtor disputes this amount.

[6] This is the total amount of tax claims asserted, as listed on the claims register as of September 5, 2023.

3) General Unsecured Claims-$0

4) Insider Unsecured Claims- $0

Total Liabilities                    $367,577.19

## IV. <u>ANTICIPATED FUTURE OF THE COMPANY</u>

The Debtor shall immediately attempt to market the Property for sale even during the ongoing restoration work in connection with the transferrable Access Agreement.   The Debtor will determine what to do with the net proceeds after paying Creditors under the Plan.   The Debtor will use the proceeds in part to grow the business back to what it was before Covid.

If the Debtor refinances the Property, it shall immediately liquidate the balance of the construction equipment and put the Property up for rent.   The Debtor may sell or refinance the Property within years of the Effective Date.

## V. <u>SOURCE OF INFORMATION CONTAINED IN THIS STATEMENT</u>

The source of information in this statement is Adam Rosen, the Debtor's principal, and the Debtor's books and records.

## VI.   <u>DEBTOR'S OPERATIONS IN CHAPTER 11</u>

Critical to the Debtor's reorganization is securing the Refinancing or sale of the Property. It hopes to have a firm commitment, sufficient to fund the Plan before the Confirmation Date.

In addition, Debtor's counsel negotiated the access agreement with the Board pursuant to which the Debtor stands to receive monthly access fees.

## VII. <u>LIQUIDATION ANALYSIS</u>

Based on the assets and liabilities discussed above, the Debtor estimates that there is approximately $10,200,000 of equity in the Debtor's assets.

If this case converted to one under chapter 7, the liquidation value of the assets is difficult to determine.   The Debtor believes the Property would be sold for 25% to 33% less in chapter 7.   The Debtor cannot assess whether and to what extent a chapter 7 trustee would pursue the two adversary proceedings. So their value cannot be estimated.   The Debtor's estate would be subject to an additional layer of trustee's fees and the fees of their professionals. Any distribution to creditors would likely be delayed years beyond what the Plan anticipates.

## VIII. <u>ACCOUNTING METHOD USED TO PRODUCE THE FINANCIAL DATA</u>

Cash method of accounting.

## IX. <u>THE FUTURE MANAGEMENT OF THE COMPANY</u>

The Debtor's management will continue to operate the Debtor after confirmation of the Plan of reorganization.   Adam Rosen, the Debtor's principal, shall remain the Debtor's Managing Member.

## X. <u>ESTIMATED ADMINISTRATIVE EXPENSES</u>

Jacobs P.C., the Debtor's bankruptcy counsel expects to apply for total compensation of approximately $_____with expenses of approximately $_____.
Northgate, the Debtor's proposed real estate broker expects to apply for total compensation of approximately $_____ with expenses of approximately $_____.

## XI.  U.S. TRUSTEE FEES

The Debtor is current with the fees due to the Office of the United States Trustee under 28 U.S.C. § 1930.   The U.S. Trustee's fees will continue to be due and payable until a Final Decree is entered or the case is dismissed or converted, whichever is earlier.

## XII.  AMOUNT REALIZABLE FROM PREFERENCE AND FRAUDULENT CONVEYANCES

The Debtor's counsel examined the Debtor's financial history and determined that there are no viable fraudulent conveyance or preferential transfer actions.

## XIII. LITIGATION LIKELY TO ARISE IN A NON-BANKRUPTCY CONTEXT

The Debtor's schedules and this Disclosure Statement indicates the Debtor's belief that it has actionable claims against the Board and the Actions.   Green Point anticipates pursuing and continuing to pursue viable claims.

## XIV.  THE TAX ATTRIBUTES OF THE DEBTOR

The Debtor is investigating whether it has any loss-carry forward.     The Debtor does not expect the Plan or its consummation to have any negative tax consequences.

## XV. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

If the Property is sold, all extant Executory Contracts related to the Property are being rejected, pursuant to Bankruptcy Code § 365.   If the Property is refinanced, all Executory Contracts related to the Property are being assumed, pursuant to Bankruptcy Code § 365.   All

executory contracts unrelated to the Property are presently being assumed, pursuant to Bankruptcy Code § 365.

## XVI. THE PLAN OF REORGANIZATION

**THE FOLLOWING IS A SUMMARY OF THE PROVISIONS OF THE PLAN AND, ACCORDINGLY, IS NOT AS COMPLETE AS THE FULL TEXT OF THE PLAN THAT ACCOMPANIES THIS DISCLOSURE STATEMENT.   THE PLAN ITSELF SHOULD BE READ IN ITS ENTIRETY. IN THE EVENT OF ANY INCONSISTENCIES BETWEEN THE DESCRIPTION OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT AND THE PLAN ITSELF, THE PROVISIONS OF THE PLAN SHALL CONTROL.**

### A. General

The Debtor believes that under the circumstances, the Plan provides for the best possible recovery to and fair treatment in accordance with the provisions of and restrictions imposed by the Bankruptcy Code of each Class of Claims or Interests.   The Plan contains different articles detailing definitions, classification, treatment of Claims and Existing Equity Interests, means of implementation and other miscellaneous provisions that will, if the Plan is confirmed after appropriate notice and a hearing, be binding on the Debtor, any Entity acquiring property under the Plan and all Creditors and any Interest Holders.   If confirmed, the Plan will be binding whether or not a Claim or Interest is impaired under the Plan and whether or not a Creditor or Interest Holder has accepted the Plan.

***Solicitation of Acceptance of the Plan***. This Disclosure Statement will be reviewed by the Bankruptcy Court in accordance with Bankruptcy Code § 1125.   It will be provided to all Creditors and Interest Holders in this Case.   This Disclosure Statement is intended to assist Creditors and Interest Holders in evaluating the Plan and their decision to accept or reject the Plan. Your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement at the time of, or before, such solicitation.

***Votes Considered in Determining Acceptance of the Plan***. Classes 1,2,3,4,5, and 7 are unimpaired under the Plan.   Therefore, Classes 1,2,3,4,5, and 7 Creditors and Interest Holder are deemed to have accepted the Plan and are not entitled to vote.

Class 7 is impaired.   They are entitled to vote to accept or reject the Plan.   Creditors entitled to vote are receiving ballots.

***Voting Requirements with Respect to the Plan***.   The Plan will be confirmed if it is accepted by the requisite majorities of the Debtor's Creditors.   The requisite majorities with respect to each class are at least two-thirds (2/3) in dollar amount, and more than one-half (½) in number of allowed eligible claims that actually vote within the time period prescribed by the Court.

Ballots for voting are enclosed.   Ballots should be completed as promptly as possible and returned to the Debtor, c/o its counsel, Jacobs P.C., 595 Madison Avenue, 39th Floor, New York, New York 10022 Attn: Leo Jacobs, Esq.,   The Bankruptcy Court has set October __, 2023, at 5:00 Eastern Time   as the last date for receipt of ballots.   That date may be extended only by further Order of the Bankruptcy Court.

In addition to voting, a creditor or party in interest has the right to object to the Plan, in writing, on any appropriate grounds.

**ANY BALLOT RECEIVED AFTER THE LAST DATE FOR RECEIPT OF BALLOTS WILL NOT BE COUNTED IN THE DETERMINATION OF WHETHER A CLASS HAS APPROVED THE PLAN OF REORGANIZATION**

*Hearing on Confirmation of the Plan*. The Bankruptcy Court has set a hearing to determine if the Plan has been accepted by the required number of holders of Claims and Interests and if other requirements for Confirmation of the Plan outlined in the Bankruptcy Code have been satisfied. The hearing on Confirmation of the Plan shall commence on October __, 2023, at the United States Bankruptcy Court, located at the Alfonse M. D'Amato Federal Courthouse, 290 Federal Plaza, Central Islip, New York 11722. Any objections to confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for the Debtor on or before three days prior to the Confirmation Hearing.

## B. <u>Underlying and Summary of Plan Provisions</u>

The Plan is a 100% plan. The source of the funds or the procedures to satisfy Claims and Existing Interests are set forth more fully below.   The following sections describe in detail why the Plan is feasible and where and how the Debtor will obtain the proceeds to make the payments or provide the treatment and to assume the obligations set forth in the Plan.

Article I of the Plan contains a series of definitions that are applicable to both the Plan and this Disclosure Statement.   Readers are referred to the text of Article I of the Plan for a description of each defined term.

Article II of the Plan describes the classification of Claims and Interests. The Plan classifies Claims and Interests separately in accordance with the Bankruptcy Code and provides different treatment to different Classes. The Plan provides for seven (7) separate Classes of Claims and one (1) Class of Interests each of which is accorded the treatment proposed for such Class or group under the Plan. Payments, Distributions and treatment provided under the Plan to, or for the benefit of, all Creditors and will be in full satisfaction and discharge of Claims and Interests, as more particularly explained in other Articles of the Plan.

Pursuant to section 1141 of the Bankruptcy Code, upon Confirmation of the Plan and achievement of the Effective Date, and except as otherwise provided for in the Plan, the Debtor will be discharged from all Claims and Interests that have arisen before Confirmation of the Plan.

## C. Summary of Treatment of Unclassified Claims

## 1. Allowed Administrative Claims

Allowed Administrative Claims are Claims against the Debtor and the Estate for administrative expenses (normally expenses accruing during the Bankruptcy Case) referred to in and allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code including, but not limited to, actual and necessary costs and expenses of preserving the Estate. Administrative Claims include, by way of example only, wages, salaries, or commissions for services rendered after the Relief Date, compensation and reimbursement of expenses awarded by Final Order of the Bankruptcy Court to Professional Persons, and costs associated with solicitation of acceptances and rejections of the Plan.

Administrative Claims representing liabilities incurred in the ordinary course of the Debtor's business are being paid in due course during the Bankruptcy Case, or will be paid thereafter, when same become owing pursuant to their terms. To the extent any such liabilities remain unpaid and are due pursuant to terms as of the Effective Date, they will be paid by the Debtor Post-Effective Date pursuant to and in accordance with ordinary business terms.

Claims for unpaid compensation and reimbursement of expenses to Professional Persons will be paid in Cash on the Effective Date, subject to same having been allowed and approved by the Bankruptcy Court, unless the Debtor and the holders of such Allowed Claims agree to other payment terms.

**D.** **Summary of Treatment of Classes of Claims and Interests**

| Class | Description | Distribution & Treatment |
|---|---|---|
| No Class | Administrative Claims | Allowed Administration Claims will be paid in full in cash on the Effective Date or entry of an order, if required, or as otherwise agreed to between the Debtor and the holder of such Claim. |
| Class 1 | Secured Claim of Columbia Capital, Co. ("Columbia"), secured by the first mortgage on the Debtor's Real Property | The holder of an Allowed Class 1 Claim shall be paid in full on the Effective Date. Unimpaired. |
| Class 2 | All Other Secured Creditors | Allowed Class 2 Claims shall be paid in full on the Effective Date. Unimpaired. |
| Class 3 | All Allowed Claims Entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8). | Allowed Class 3 Claims shall be paid in full on the Effective Date. Unimpaired. |

| Class 4 | The Claims of Taxing Authorities | Allowed Class 4 Claims shall be paid in full on the Effective Date. Unimpaired. |
|---------|--------------------------------|-------------------------------------------------------------------------------|
| Class 5 | General Unsecured Claims | The holders of Allowed Class 5 Claims shall be paid in full on the Effective Date. Unimpaired. |
| Class 6 | Unsecured Insider Creditors | Allowed Claims of Class 6 Creditors will be paid in full through periodic payments when available, provided: a.) the Claims of Classes 1-5 are paid in full; and b.) there are sufficient net revenues to make the payment. Impaired. |
| Class 7 | Equity Security Interest Holders | Allowed Class 7 Equity Security Interest holders will retain their interest in the Debtor. Unimpaired. |

**E. Summary Description Concerning Rejection and Assumption of Executory Contracts**

If the Property is sold, all extant Executory Contracts related to the Property are being rejected, pursuant to Bankruptcy Code § 365. If the Property is refinanced, all Executory Contracts related to the Property are being assumed, pursuant to Bankruptcy Code § 365. All executory contracts unrelated to the Property are presently being assumed, pursuant to Bankruptcy Code § 365.

**F. Summary Description of Plan With Regard to Provisions Concerning Distribution**

The Plan provides that payments and Distributions to be made by the Debtor on the Effective Date shall be made on that date, or in certain instances within a reasonable period thereafter, except as is otherwise ordered by the Court or agreed to by the Debtor and a Creditor. If any payment or Distribution shall be due on a day other than a Business Day, the payment or

Distribution shall be made on the next Business Day. At the election of the Debtor, Distributions to be made in Cash shall be made by check drawn on a domestic bank or by a wire transfer from a domestic bank. No payments of fractional cents shall be made. In the event any Entity fails to claim the distribution within one hundred and eighty (180) days from the date of such Distribution, then such payment shall be deemed Unclaimed Property. In such event, the unclaimed monies shall be placed back into the Debtor's Confirmation Fund and redistributed to the creditor body.

### G. Summary Description Of Plan Concerning Discharge and Injunctions

The Plan provides specific provisions regarding discharge of Claims and Interests, releases and terminations. All Creditors, Interest Holders and parties in interest should refer specifically to the Plan with regard to provisions concerning discharge of Claims and interests vesting of property in the Debtor, injunctions, releases, effect on certain Claims and Interests and certain terminations. If Confirmation of the Plan does not occur, the Plan shall be deemed null and void and, in such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, the rights of any Interest Holders, or any other Entity or to prejudice in a manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor. Nothing contained herein or in the Plan is nor shall such be deemed an admission of any fact by the Debtor. Only the Plan, when confirmed, will govern the rights and liabilities as between and among the Debtor, and any Creditor, Interest Holder or party-in-interest or such other Person or Entity whose rights are affected by the Plan.

**H. Summary Description of Provisions Regarding Procedures for Resolving Disputed Claims**

    **Claim Objections**.   The Plan grants the Debtor the right to serve and file objections to the allowance, amount or classification of any Claim or Interest not later than sixty (60) days after the Confirmation Date or such other time as may be fixed by the Court.   At the Debtor's election, the objection to a claim can be prosecuted in the Bankruptcy Court or such other court where litigation with the Creditor was pending prior to the Case.

    **Reserve Fund**: Where there is an unresolved objection to a Claim as of the Confirmation Date of this Plan or afterward, the Debtor shall reserve in the Debtor' Estate a sum not less than the principal amount required to pay the Disputed Claim was allowed, in full, and deposit that amount in a reserve fund (the "Reserve Fund").   Disputed Claims that are resolved shall be satisfied from the Reserve Fund.   If the Reserve Fund exceeds the full amount of a Disputed Claim or Claims, any excess will be returned to the Reorganized Debtor.

    **Payment of Disputed Claims**:   In the event that any payment or Distribution must be made to a holder of a Disputed Claim which become an Allowed Claim, the treatment or Distribution shall be made in accordance with the provisions of the Plan with respect to the Class of Creditors to which the respective Holder of such Claim belongs.

**I. Summary Description Of Plan Provisions Regarding Retention of Jurisdiction**

    The Plan provides that the Court shall retain jurisdiction of the Bankruptcy Case following Confirmation of the Plan for a wide range of matters and issues and for various purposes, including interpretation of the Plan, resolution of disputes concerning orders of the Court, pending litigation, Professional Persons compensation issues, determination of disputes

and issues regarding property and rights of the Debtor. All Claimants, Interest Holders and parties-in-interest should refer specifically to the Plan for a full and complete statement of the various matters in which the Bankruptcy Court shall, under the terms of the Plan, retain jurisdiction.

**J**.  **Summary Description of Plan Provisions Regarding Retention Of Assets And Title to Property**

Upon confirmation of the Plan, title to the Property and Assets of the Estate shall vest in the Debtor.

**K.  Disbursing Agent**

All Distributions pursuant to the Plan will be made when due, in accordance with the Plan. The Debtor is designating its attorneys, Jacobs P.C., to be the Disbursing Agent.   The Debtor or Disbursing Agent shall establish such accounts or funds which will be held for the Creditors entitled to distribution, which shall not constitute property of the Estate.   The disbursing agent will not be required to post a bond.

**L. Summary Description of General Provisions of The Plan**

The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan.   The Plan also prescribes certain rules pertaining to notice to the Debtor, as well as notice to all other Entities post-Confirmation.   The Plan shall, except to the extent governed by the Bankruptcy Code or applicable federal law, be governed, construed and enforced in accordance with the laws of the State of New York.

# XVIII.   PLAN FUNDING AND MEANS FOR EXECUTION OF THE PLAN

The Plan is to be implemented in a manner consistent with Bankruptcy Code § 1123, which essentially sets forth the minimum requirements and elements that a plan of Reorganization must contain in order to meet the standards for Confirmation.

## A. Funding

The Plan will be funded from the proceeds of sale or refinancing of the Property.

## B. Summary of Vesting of Interests and Title

As of the Effective Date, the Debtor shall retain all legal title to its property to which it has good title as of the Relief Date, including all leasehold interests being assumed under Article X of the Plan or to which it received title during the Bankruptcy Case.   All Assets possessed by or titled to the Debtor or the Estate will vest in the Debtor free and clear of all Claims and Existing Equity Interests, except as may be provided for in the Plan.

C.   **Summary of Transfer Charges Treatment** : Pursuant to Bankruptcy Code § 1146, all transfers of any interest which are made pursuant to or contemplate by the Plan, once subject to a Confirmation Order, shall be exempt from all otherwise applicable transfer taxes, stamp taxes, recording fees and other such charges assessed by the New York State and New York City taxing authorities for the recording and filing of any instruments of transfer. (the "Exempt Taxes") and such Exempt Taxes shall not be paid, for the transactions contemplated in the Plan.

## XIX.  ALTERNATIVES TO THE PLAN

A potential alternative to the Plan would be converting this Case to Chapter 7 liquidation or liquidation within Chapter 11 through a liquidating trustee.   It is unlikely that there will be no distribution to Unsecured Creditors in a Chapter 7 case. However, distributions could be reduced and would be delayed significantly.   Dismissing the Case is another alternative to the Plan.   Then, the Debtor would be litigating in state court.   That litigation would use substantial financial resources and time.

**Essentially, the Debtor believes that there is <u>no</u> viable better alternative to the Plan. Any alternative would be significantly prejudicial to all Creditors and parties-in-interest.**

**For all of the above reasons, the Debtor believes that the Plan meets the best interests of creditors test.   The Debtor is soliciting your vote in favor of the Plan.**

Dated:   New York, New York
September 6, 2023

GREEN POINT MANAGEMENT
SYSTEMS, LLC


By:   /s/ Adam Rosen            _
    Adam Rosen
    Managing Member

JACOBS P.C.
Attorneys for Green Point Management
Systems, LLC
Debtor and Debtor-in-Possession


By: /s/ Leo Jacobs
    Leo Jacobs
595 Madison Avenue, 39th Floor
New York,   New York 10022
Tel. No. 212-229-0476