Leo Jacobs, Esq.
JACOBS P.C.
Counsel for the Debtor
595 Madison Avenue, 39th Floor
New York, New York 10023
(212) 229-0476

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:

**GREEN POINT MANAGEMENT
SYSTEMS LLC**,                          Case No: 23-71078-las
                                                     Chapter 11

            Debtor.

-------------------------------------------------------x

**MOTION FOR ORDERS: (I) SCHEDULING A HEARING
TO CONSIDER THE DEBTOR'S MOTION
(A) AUTHORIZING AND SCHEDULING AN AUCTION TO
SOLICIT BIDS FOR THE SALE OF THE DEBTOR'S
INTEREST IN A CONDOMINIUM LOCATED AT 231
NORMAN AVENUE, SUITE 106, BROOKLYN, NEW YORK,
FREE AND CLEAR OF LIENS, INTERESTS AND
ENCUMBRANCES; (B) APPROVING BIDDING
PROCEDURES AND CERTAIN FEE PROTECTIONS;
(C) SCHEDULING A HEARING TO CONSIDER
APPROVAL OF THE SALE AND (D) ESTABLISHING THE
FORM AND MANNER OF NOTICES RELATED THERETO
AND (II) APPROVING THE REQUESTED RELIEF
HEREIN**

**TO: THE HON. LOUIS A SCARCELLA,
UNITED STATES BANKRUPTCY JUDGE:**

        Greenpoint Management Systems LLC (the "Debtor") by its attorneys, Jacobs PC, for its motion (the "Sale Procedures Motion") for entry of the prefixed order scheduling a hearing on an expedited basis ("Expedited Scheduling Order") and orders: (A) Authorizing and Scheduling an Auction to Solicit Bids for the Sale of the Debtor's Interest in a condominium

located at 231 Norman Avenue, Suite 106, Brooklyn, New York (the "Property"); (B) Approving Bidding Procedures of the sale of the Property; (C) Scheduling a Hearing to Consider Approval of the Sale; and (D) Establishing the Form and Manner of Notices Related Thereto.

In support of the foregoing, the Debtor respectfully represents:

## PRELIMINARY STATEMENT

1. The Debtor has filed this Sale Procedures Motion to obtain court authority to sell its interest in its condominium, namely, unit 106 at 231 Norman Avenue, Brooklyn, NY 11222 (the "Property") so that the Debtor may continue with its reorganization efforts.

2. Prepetition, the Property was scheduled to be sold at a foreclosure sale by its largest secured creditor, Columbia Capital Co. ("Columbia"), on March 30, 2023. However, to preserve the Property for the benefit of its estate and creditors, on March 29, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with this Court.

3. The Debtor is a company that is engaged in project management and dispute resolution matters.

4. The Debtor is authorized to remain in possession of its property and to continue the operation and management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Eastern District of New York (the "U.S. Trustee").

6. The Debtor filed its schedules of assets and liabilities and statement of financial affairs (collectively, the "Schedules") [Docket Nos. 19 & 20].

7. On August 8, 2023, the U.S. Trustee filed a Moton to convert this case from a chapter11 case to one under chapter 7, or alternatively, to dismiss the case (the "Conversion Motion") [Docket No. 60]. The Debtor and the U.S. Trustee worked out an agreement to permit this case to proceed and to provide for the sale of the Property at auction under the jurisdiction of this Court.

8. On September 12, 2023, this Court entered an order (the "Settlement Order") approving resolution of the Conversion Motion providing that on or before September 22, 2023, the Debtor shall file a motion under Bankruptcy Code section 363, the Local Rules for the Eastern District of New York and the Guidelines for the Eastern District of New York governing sale, seeking entry of an order establishing and authorizing:

> (a) noticing and bidding procedures for a sale of the Debtors interest in the condominium identified as 231 Norman, Suite 106, Brooklyn, New York;
>
> (b) the sale of the Property to be conducted no later than November 8, 2023; and
>
> (c) a further hearing on November 16, 2023 for the purpose of approving and confirming the sale of the Property.

If the Debtor fails to timely move under Bankruptcy Code section 363 seeking entry of an order for a sale, or fails to confirm the sale by November 16, 2023, the Debtor consents to the dismissal of the within case on November 16, 2023. (Docket No. 73).

9. In connection with the contemplated sale, the Debtor identified a real estate broker, Northgate Real Estate Group, to market the Property as the Debtor's exclusive broker, and established bidding procedures in the event an auction of the Property is required. A copy of the proposed Bidding Procedures is attached as Exhibit A. Shortly after filing this Sale Procedures Motion, the Debtor will be filing an application to approve the retention of Northgate.

10. On September 6, 2023, the Debtor filed its proposed plan of reorganization and accompanying disclosure statement (Docket Nos. 70 & 71). No hearing on confirmation has been set.

11. To facilitate the plan confirmation process, the Debtor has filed this Sale Procedures Motion.

**JURISDICTION AND STATUTORY PREDICATE
FOR RELIEF REQUESTED**

12. This Court has jurisdiction over the Sale Procedures Motion pursuant to 28 U.S.C. § 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (N).

13. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105, 363, 364, 365, 503(b) and 507(a) of title 11 of the United States Code (the Bankruptcy Code"); Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); Rules 2002-1, 6004-1, 6006-1, and 9006-1(b) of the Local Bankruptcy Rules of this Court; and the Amended Guidelines for the Conduct of Asset Sales established and adopted by the Court pursuant to General Order **M-383**.

14. Under the proposed bidding procedures, Columbia Capital has the right to the right to make a Credit Bid (as defined below) in an amount up to the allowed amount of its claim as of the auction date.

15. The assets to be sold shall consist of the Property, which will be auctioned by Northgate or its affiliates or agents.

16. The Property shall be sold as is, where is, without any representation or warranty of any type whatsoever.

17. The Sale is subject to higher and better offers.

18. The Sale provides for certain sale and bidding procedures which are discussed herein. As discussed below, pursuant to a proposed Purchase and Sale Agreement, the sale, transfer, and/or assignment of the Property and the contracts to be assigned, if any, (the "Assigned Contracts") shall be free and clear of (i) all Liens (as defined in the Purchase and Sale Agreement), interests and encumbrances, and (ii) any successor liability.

## **LEGAL BASIS FOR THE RELIEF REQUESTED**

**The Sale Should be Approved under Section 363(b) of the Bankruptcy Code.**

19. Section 363 of the Bankruptcy Code provides authority for a trustee and, through the application of Bankruptcy Code section 1107(a), a debtor in possession, "after notice and a hearing, [to] use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The authority to sell assets conferred upon a debtor by Section 363 (b) "include[s] a sale of substantially all the assets of an estate." *Otto Preminger Films, Ltd. v. Qintex Entertainment, Inc. (In re Qintex Entertainment, mc)*, 950 F.2d 1492, 1495 (9th Cir. 1991). Further, 11 U.S.C. § 105(a) allows the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

20. A bankruptcy court's power to authorize a sale under Section 363(b) is to be exercised at the court's discretion. *In re WPR V-TV,* 983 F.2d 336, 340 (1st Cir. 1993), *New Haven Radio, Inc. v. Meister (In re Martin-Trigona)*, 760 F.2d 1334, 1346 (2d Cir. 1985), *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2d Cir. 1983).

21. Courts have also required that the debtor provide reasonable and adequate notice of the sale, that the sale price be fair and reasonable, and that the sale be the result of good faith negotiations with the buyer. *See, e.g., In re Ewell*, 958 F.2d 276 (9th Cir. 1992) (declining to

set aside or modify a sale pursuant to section 363 because the price was fair and reasonable and the buyer was a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code); *In re King-Wilson,* 1998 U.S. Dist. LEXIS 16595 at * 11-12 12 (N.D. Cal. Oct. 13, 1998). Here, the Debtor is providing notice of this Sale Procedures Motion to all creditors, including the Property's secured creditor, Columbia Capital, and all other parties in interest.

22. **Good Business Reason Exists to Approve the Sale Procedures and Contemplated Sale.** In *Lionel*, the Second Circuit Court of Appeals held that the standard for the proper exercise of the debtor's discretion is "a good business reason." *In re Lionel Corp.,* 722 F.2d at 1071. The Second Circuit in *Lionel* adopted, in part, the following criteria for evaluating whether a good business reason exists for authorizing a sale of substantially all the assets of a debtor:

> (1) the proportionate value of the asset to the estate as a whole;
> (2) the amount of elapsed time since the filing of the petition;
> (3) the likelihood that a plan will be proposed and confirmed in the near future;
> (4) the effect of the proposed disposition on future plans of reorganization; and
> (5) most importantly, whether the assets to be sold are decreasing or increasing in value.

*Id.* n4. *See also, Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (Where a debtor seeks authority to act under section 363, the debtor's actions should be approved if such debtor demonstrates good faith and the exercise of sound business judgment); *The Official Comm. Of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).

23. The Debtor's determination to pursue the Sale as set forth herein is a valid and sound exercise of its business judgment. The Debtor filed this case to preserve a primary asset for the use in funding its proposed plan of reorganization and has filed the Sale Procedure Motion consistent with the agreement it reached with the US Trustee in the Settlement Order.

24. The Debtor respectfully submits that the proposed sale of the Property as set forth herein is entirely consistent with the guidelines set forth in *Lionel* and its progeny. The proposed Sale Procedures for the contemplated sale of the Property should, therefore, be approved.

25. The Debtor believes a prompt sale will maximize the amount that the Debtor, its estate, and its creditors may realize for the value of the Property. The terms and conditions of the Auction and the Bidding Procedures are fair and reasonable and in the best interest of the Debtor, its creditors, and its estate.

26. The Debtor is confident that the winning bid that emerges from this process will truly be the highest and best bid obtainable for the Debtor's Property. The Purchaser's bid will be tested through the Auction consistent with the requirements of the Bankruptcy Code and Bankruptcy Rules and pursuant to procedures approved by the Court. Consequently, the fairness and reasonableness of the consideration to be paid by the Purchaser ultimately will be demonstrated by adequate "market exposure" and an open and fair auction process.

27. **<u>Sale Free and Clear of Liens.</u>** The Debtor requests authorization to sell the Property free and clear of liens, claims, encumbrances, and other interests, which will attach to the sale's proceeds. Section 363(f) of the Bankruptcy Code authorizes a debtor in possession to sell property under § 363(b) "free and clear of any interest in such property of an entity other

than the estate" if one of the following conditions is satisfied: (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f).

28. The Debtor believes one or more of the tests of Section 363(f) are satisfied with respect to the Sale. Under Section 363(f)(5), the Court can compel existing lienholders to accept money satisfaction of their interests in a legal or equitable proceeding. Applicable case law provides that a sale of a debtor's assets free and clear of liens, interests, and encumbrances, with such liens, interests and encumbrances attaching to the net proceeds of the sale, is permissible under § 363(f). *See, e.g., In re Goffena*, 175 B.R. 386, 387 (Bankr. D. Mont. 1994); *In re Granite Lumber Co.*, 63 B.R. 466, 471 (Bankr. D. Mont. 1986) ("the real and personal property of the Debtor's estate was sold by the Trustee pursuant to Section 363(f) of the Code, free and clear of liens, with valid liens to attach to the proceeds of sale."); see also, e.g., *Folger Adam Security, Inc. v. DeMatteis/MacGregor, J.V.,* 209 F.3d 252, 259 (3d Cir. 2000) ("[T]he holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of § 363(f) and, therefore, attaches to the proceeds of the sale."); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

29. The Debtor expects that, with respect to Section 363(f)(2), each of the parties asserting liens or encumbrances will consent to, or absent any objection to the Sale Motion, will be deemed to have consented to, the Sale. Therefore, the Debtor satisfies the requirements of Bankruptcy Code Section 363(f) to sell free and clear of liens.

**Good Faith Protection.**

30. The Bid Procedures provides that a Purchase and Sale Agreement shall provide that a Sale Order shall have a finding of the Court that the Purchaser is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) and (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. §363(m).

31. While the Bankruptcy Code does not define "good faith," the Second Circuit has indicated that a party would have to show fraud or collusion between the buyer and the debtor in possession or trustee or other bidders to demonstrate a lack of good faith. *See Kabro Assocs. of West Islip, I.LC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Angelika Films, 57th, Inc.,* 1997 WL 283412, at *7 (S.D.N.Y. 1997); *In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

32. The Purchase and Sale Agreement will have been negotiated at arms' length and in good faith. There will be no fraud or collusion in those negotiations. In addition, the Purchaser will not be an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. The consideration to be received by the Debtor pursuant to the Purchase

Agreement will be fair and reasonable. Thus, the Purchaser is entitled to the full protections afforded good faith purchasers under section 363(m) of the Bankruptcy Code.

33. For the same reasons mentioned above, the Purchase Agreement will not constitute an avoidable transaction pursuant to section 363(n) of the Bankruptcy Code. There will be no indication of fraud or improper insider dealing of any kind. Therefore, the Purchaser will not have engaged in any conduct that would cause the Sale to be affected under section 363(n) of the Bankruptcy Code.

34. Furthermore, due to the open and competitive nature of the Auction, any asset purchase agreement finalized with the successful bidder will, by definition, be the result of arms' length negotiations in good faith.

35. **Assumption and/or Assignment of Executory Contracts and Unexpired Leases.** Sections 365(a) and (b) of the Bankruptcy Code authorize a debtor in possession to assume, subject to the court's approval, executory contracts, or unexpired leases of the debtor. The standard applied by a court in determining whether the assumption or rejection of an executory contract or unexpired lease pursuant to section 365(a) should be approved is the "business judgment" test, which requires a debtor to determine that the requested assumption or rejection would be beneficial to its estate. *See, In re Group of Institutional Investors, Inc. v. Chicago, Milwaukee, St. Paul and Pac. R.R. Co.,* 318 U.S. 523, 550 (1943) ("the question [of assumption] is one of business judgment"); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098-99 (2d Cir. 1993) (to decide a motion to assume, the court must put itself in the position of the trustee and determine whether such assumption would be a good decision or a bad one).

36. Pursuant to this Sale Motion, (ii) all unexpired leases and executory contracts that are related to the Property shall be rejected unless the Successful Bidder files an assumption notice at least 5 days prior to the hearing to approve the sale. To the extent a proposed Assigned Contract is not an executory contract within the meaning of Section 365 of the Bankruptcy Code, the Debtor's interest in such contract will be transferred to the Purchaser as an asset of the Debtor pursuant to Section 363 of the Bankruptcy Code.

37. As part of the Purchase Agreement, the Debtor, pursuant to Bankruptcy Code Section 365(f), will assign all the assumed executory contracts and unexpired leases that are required to be assigned to the Purchaser pursuant to the terms of the Purchase and Sale Agreement.

38. Section 365(f) of the Bankruptcy Code authorizes a debtor in possession to assign an assumed executory contract or unexpired lease subject to bankruptcy court approval. Specifically, a debtor in possession may assign an executory contract or an unexpired lease of the debtor if it assumes the agreement in accordance with section 365(a) and provides adequate assurance of future performance by the assignee, whether there has been a default under the agreement. See 11 U.S.C. § 365(f)(2). Significantly, among other things, adequate assurance may be provided by demonstrating the assignees financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (stating that adequate assurance of future performance is present when the prospective assignee of a lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to the business to give it a strong likelihood of succeeding).

39. The Debtor will pay, from the sale proceeds, all cure amounts in connection with the Assigned Contracts, as set forth in the notice of assumption and/or assignment, attached hereto as Exhibit E (the "Assignment Notice"). The Purchaser will need sufficient assets to continue performance thereunder, and at the Sale Hearing the Purchaser will demonstrate to the satisfaction of the Bankruptcy Court, upon request, that adequate assurance of future performance is present by the promise to perform the obligations of the Assigned Contracts first arising thereunder from and after the closing date.

40. Because the Debtor cannot obtain the full benefits of the Purchase and Sale Agreement without the assumption and assignment of the Assigned Contracts, such transfer of the Assigned Contracts is a sound exercise of the Debtor's business judgment. The requirements of section 365 of the Bankruptcy Code are satisfied.

41. To assist in the assumption, assignment and/or sale of the Assigned Contracts, the Debtor also requests that the Bankruptcy Court enter an order providing that anti-assignment provisions in the Assigned Contracts, if any, shall not restrict, limit, or prohibit the assumption, assignment and sale of the Assigned Contracts and are deemed and found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

<u>Successor Liability.</u>

42. Under the terms of the Purchase and Sale Agreement, the Purchaser is not liable for any of the Debtor's liabilities as a successor to the Debtor's business or otherwise. Extensive case law exists providing that claims against the winning bidder are directed to the proceeds of a free and clear sale of property and may not subsequently be asserted against a buyer.

43. Although section 363(1) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined in the Bankruptcy Code. *In re General Motors Corp.*, 407 B.R. 463, 501 (Bankr. S.D.N.Y. 2009) (while "claim" is defined in the Bankruptcy Code, neither "interest" nor "interest in property" is defined).

44. Courts addressing the issue have found that the scope of section 363(f) is broad enough to encompass successor liability. *In re Trans World Airlines. Inc.,* 322 F.3d 283, 288-89 (3rd Cir. 2003) (the Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only in rem interests in property," the trend in modern cases is towards "a more expansive reading of 'interests in property' which 'encompasses other obligations that may flow from ownership of the property."); *In re Leckie Smokeless Coal Co.,* 99 F.3d 573, 581-82 (4th Cir. 1996). *See also, In re General Motors,* 407 B.R. at 504 (agreeing that in personam claims, including any potential successor or transferee liability claims against the debtor, as well as in rem interests, are encompassed by section 363(f) and can therefore be extinguished); *In re Grumman Olson Indus. Inc.*, Case No. 02-16131 (SMB (Bankr. S.D.N.Y. February 25, 2011) (by its terms, section 363(1) of the Bankruptcy Code cleanses the transferred assets of any attendant liabilities and allows the buyer to acquire them without fear that an estate creditor can enforce its claim against those assets).

45. For obvious reasons, the very purpose of an order purporting to authorize the transfer of assets free and clear of all liens, claims, encumbrances, and other "interests" would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's prior conduct. *See In re General Motors,* 407 B.R. at 500 (if a buyer cannot obtain protection against successor liability, it may pay less for the assets because of the risk).

46. Therefore, the order approving the sale of the Property to the Purchaser should state that the Purchaser is not liable as a successor under any theory of successor liability, as set forth herein and in the Purchase and Sale Agreement.

47. The Purchase and Sale Agreement provides that a Sale Order shall have a finding of the Court that the Purchaser is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) and (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. §363(m).

48. While the Bankruptcy Code does not define "good faith," the Second Circuit has indicated that a party would have to show fraud or collusion between the buyer and the debtor in possession or trustee or other bidders to demonstrate a lack of good faith. *See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.),* 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Angelika Films, 57th, Inc.*, 1997 WL 283412, at *7 (S.D.N.Y. 1997); *In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

49. The Purchase and Sale Agreement will be negotiated at arms' length and in good faith. There will be no fraud or collusion in those negotiations. In addition, the Purchaser will not be an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. The consideration to be received by the Debtor pursuant to the Purchase and

Sale Agreement is fair and reasonable. Thus, the Purchaser is entitled to the full protections afforded good faith purchasers under section 363(m) of the Bankruptcy Code.

50. For the same reasons mentioned above, the Purchase and Sale Agreement does not constitute an avoidable transaction pursuant to section 363(n) of the Bankruptcy Code. There is no indication of fraud or improper insider dealing of any kind. Therefore, the Purchaser has not engaged in any conduct that would cause the Sale to be affected under section 363(n) of the Bankruptcy Code.

51. Furthermore, due to the open and competitive nature of the Auction, any asset purchase agreement finalized with the successful bidder will, by definition, be the result of arms' length negotiations in good faith.

**Fee Protections; Breakup Fee; etc.**

52. As part of the sale process, Columbia Capital and all other bidders will not request, and will not be entitled to, any transaction or break-up fee, expense reimbursement, or similar type of payment. This will serve to minimize expenses incurred in Auction process for the benefit of the Debtor's estate and creditors.

53. Based on the foregoing, the Debtor respectfully submits that the Court can approve the sale pursuant to section 363(b)(1) of the Bankruptcy Code. Coupled with the equitable powers conferred by section 105(a) of the Bankruptcy Code, this Court may approve the Motion for the reasons set forth above.

54. Based on the foregoing considerations, the Debtor has determined in its business judgment that it is in the best interest of the Estate and its creditors to pursue a sale of the Condo according to the terms set forth in the proposed bidding procedures. Accordingly, the Debtor respectfully submits that this Court should approve the Motion.

**NOTICE**

55. In accordance with Bankruptcy Rule 6004(1), sales of property outside of the ordinary course of business may be by private sale or by public auction. Further, pursuant to Bankruptcy Rule 2002, a twenty-one-day notice by mail is sufficient notice of the proposed use, sale, or lease of property of the estate other than in the ordinary course of business. Subject to Bankruptcy Rule 6004, the notice of a proposed use, sale, or lease of property required under Bankruptcy Rule 2002(a)(2) must include the time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections. *See* Fed. R. Bankr. P. 2002(c)(1). Moreover, the notice of a proposed use, sale, or lease of property is sufficient if it generally describes the property. *Id.* To ensure that adequate notice of the Sale and the other relief requested herein is provided, the Debtor seeks approval of the Sale Notice, attached hereto as Exhibit D (the "Sale Notice"), and the Assignment Notice, attached hereto as Exhibit E.

56. In accordance with Fed. R. Bankr. P. 2002, the Debtor proposes to give notice of the Auction, this Sale Procedures Motion, and the Sale Hearing by serving (a) a copy of the Sale Procedures Motion, with exhibits, including the Purchase Agreement and any initial hearing notice, upon (i) all secured creditors; (ii) all other creditors of the Debtor; (iii) all parties that have filed a notice of appearance; (iv) all nondebtor parties to the Debtor's executory contracts and unexpired leases; (v) all parties that have expressed an interest in purchasing the Debtor's assets; (vi) the Office of the United States Trustee; and (vii) applicable federal and state taxing authorities (collectively, the "Notice Parties"). After the hearing on the Sale Procedures Order, the Debtor shall serve (a) the Sale Procedures Order, (b) the Bidding Procedures, and (c) the Sale Notice upon the Notice Parties. The Debtor shall serve a copy of the Assignment Notice

upon all parties with executory contracts and unexpired leases to be assigned pursuant to the terms of the Purchase Agreement after the hearing on the Sale Procedures Order.

57. The Debtor submits that such notice constitutes good and sufficient notice of the competitive offer procedures, the Sale Motion, and all proceedings to be held thereon and that no other or further notice need be given.

58. Based on the foregoing, the Debtor respectfully submits that the relief requested herein is necessary and appropriate, is in the best interests of the Debtor and its estate and should be granted in all respects. The Debtor respectfully requests that the Court enter the proposed orders granting to the Debtor the relief requested herein and such other and further relief as is just and proper.

59. No previous request for the relief sought herein has been made to any Court.

## THE NEED FOR AN ORDER SCHEDULING
## A HEARING ON REDUCED NOTICE

60. The Debtor is seeking entry of the Expedited Scheduling Order because the Debtor seeks to ensure it has sufficient time to comply with the terms and time constraints in the Settlement Order with the U.S. Trustee.

61. The Settlement Order requires the Debtor have an auction for the Property by November 8, 2023.

62. Fed.R.Bankr.P. 2002 provides that motions seeking authority to sell property be made on 21 days' notice.

63. That length of notice would provide the Debtor with sparse time to market the Property.

64. Applying Fed.R.Bankr.P. 2002's time to this Motion would dangerously reduce the Debtor's time to market the Property and publicize the auction.

65. If the hearing on the Sale Procedure Motion were not expedited, the Debtor's ability to comply with the Order would be jeopardized.

66. No party in interest will be prejudiced materially by expediting the hearing on the Sale Procedure Motion.

67. Instead, they will benefit them by enabling the Debtor to achieve the highest sale price for the Property.

**WHEREFORE**, the Debtor respectfully requests that this Court enter orders: (A) scheduling an expedited hearing to consider this Motion; (B) authorizing and scheduling an auction to solicit bids for the sale of the property at 261 Norman Avenue, Suite 106, Brooklyn, New York, free and clear of liens, interests and encumbrances; (c) approving bidding procedures and certain fee protections; (d) scheduling a hearing to consider approval of the sale; and (e) establishing the form and manner of notices related thereto; and such other further relief as this Court deems just and equitable.

Dated: New York, New York
      September 22, 2023

JACOBS P.C.
Counsel for the Debtor
595 Madison Avenue, 39th Floor
New York, New York 10023
(212) 229-0476
By: /s/ Leo Jacobs
      Leo Jacobs