# EXHIBIT C

# PURCHASE AND SALE AGREEMENT

# PURCHASE AND SALE AGREEMENT

AGREEMENT made on the _____day of _____, 2023, between Green Point Management Systems, LLC, having an office at 293 Bayport Avenue, Bayport, NY ("Seller", also referred to as "Debtor") and _ ("Purchaser"), having an address at __.

## W I T N E S S E T H:

1.      Purchase and Sale. Seller agrees to sell and convey to Purchaser, and Purchaser agrees to purchase from Seller, upon the terms and conditions hereinafter contained, the premises known as and by the street address 231 Norman Avenue, Suite 106, Brooklyn, NY (the "Premises"), together with any buildings and improvements thereon erected.

2.      Title of Seller. This sale includes all right, title and interest, if any, of Seller in and to any land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises, to the center line thereof, and all right, title and interest of Seller in and to any award made or to be made in lieu thereof and in and to any unpaid award for damages to the Premises by reason of change of grade of any street; Seller shall execute and deliver to Purchaser, on the closing of title (the "Closing") on request of Purchaser, all proper instruments for the conveyance of such title and the assignment and collection of any such award.

3.      Acceptable Title. Seller shall give, and Purchaser shall accept, such title as shown on the attached title report.

4.      Purchase Price. Purchaser shall pay to Seller for the Premises the sum of ($_____) (hereinafter, the "Purchase Price"). Purchaser shall pay the

Purchase Price as follows:

(a) _____($_____) Dollars upon the
execution and delivery of this Agreement, by wire transfer or Purchaser's check
payable to the order of Jacobs P.C., as Disbursing Agent, who shall deposit
same and hold the proceeds pending the closing of this sale, the cancellation of
the Contract, or the order of a court of competent jurisdiction approving this
sale, subject to collection and drawn on a bank which is a member of the New
York Clearinghouse Association, the receipt whereof is hereby acknowledged
(said sum and any interest thereon, hereinafter collectively the "Down
Payment").

(b) _____($_____)
Dollars, representing the balance of the Purchase Price, by wire transfer of
immediately available funds to Jacobs P.C., as Disbursing Agent, or bank
check drawn on a bank which is a member of New York Clearinghouse
Association, payable to the direct order of Jacobs P.C., as Disbursing Agent to
be paid upon the Closing.

5.      Claims.  Jacobs P.C., as Disbursing Agent hereby agrees to put in an

escrow account, to be administered by the Debtor and Jacobs P.C., Debtor's attorney, subject to

orders of the U.S. Bankruptcy Court of the Eastern District of New York before which the

Seller's bankruptcy case is pending.

6.      Bankruptcy Court Order.  This Contract is subject the entry of a Sale

Order approving the Contract. "Sale Order" means an order of the Bankruptcy Court

pursuant to sections 105, 363(b), 363(f) and 365 of the Bankruptcy Code which order

authorizes and approves, inter alia, the sale of the Property to the Purchaser on the terms and

conditions set forth herein, free and clear of all liens claims and encumbrances pursuant to 11

U.S.C. section 363(f), except as otherwise set forth herein, and the assumption by the

Purchaser, and assignment by Seller, of the assigned contracts, if any, and containing a

finding that Purchaser has acted in "good faith" within the meaning of section 363 (m) of the

Bankruptcy Code. The Sale Order shall be in the form and substance reasonably acceptable

to Purchaser. If said Sale Order is not obtained, then this Contract shall be terminated, shall be of no further force or effect, the deposit shall be returned to Purchaser, and neither party shall have any further obligation or liability to the other.

7.      Closing.  The Closing shall take place at the office of Seller's attorneys, or other mutually acceptable location, within thirty (30) days of entry of a Bankruptcy Court order approving the sale.  Upon receipt of the balance of the Purchase Price, as aforesaid, Seller shall deliver an executed and acknowledged bargain and sale deed for the Premises in statutory form for recording, sufficient to convey fee simple title to the Premises free and clear of all encumbrances except as provided in this Agreement.  For convenience, Seller may omit from the deed the recital of any or all of the "subject to" clauses herein contained and/or any other title exceptions, defects or objections which have been waived or consented to by Purchaser pursuant to and in accordance with this Agreement.  The date on which the Closing shall take place is hereinafter referred to as the "Closing Date."

8.      Broker. The parties agree that Northgate Real Estate Group ("Northgate") is the only Broker which  brought about this transaction. Purchaser and Seller represent to each other that they did not negotiate with any other broker in connection with this transaction. Purchaser and Seller hereby agree to indemnify, defend and hold each other harmless from and against any and all claims, losses, liabilities, costs and expenses (including attorneys' fees and disbursements) resulting from any claim that may be made against either party by any broker, or any other person claiming a commission, fee or other compensation by reason of this transaction, other than Northgate, if the same shall arise by, through or on account of any alleged act of Purchaser or Seller or their representatives. The provisions of this paragraph shall survive the Closing, or if the Closing does not occur, the termination of

this Agreement

        9.        **Fixtures.**

(a) Seller represents and warrants that at the time of the Closing all fixtures attached to the Premises will be owned by Seller, except for such items as may be owned by tenants. All fixtures attached or appurtenant to or used in connection with the Premises, except for such items as may be owned by tenants, to the extent that they are owned by Seller, are included in this sale in their "as is" condition as of the date of this Agreement, subject to ordinary wear and tear, casualty and natural deterioration and obsolescence.

(b) No portion of the Purchase Price is attributable to the fixtures and items of personal property included in this sale. Notwithstanding the foregoing, Purchaser agrees to pay any sales tax which may be assessed by any governmental authority in connection with the transfer or conveyance of any such property under this Agreement.

        10.      **Notices.** Any demand, request, consent or other notice given or required to be given under this Agreement shall be deemed given only if in writing and sent by personal delivery, reliable overnight courier with evidence of receipt, or by email or facsimile transmission (if by email and or facsimile with confirmation by one of the other methods of notice), addressed as follows:

| | |
|---|---|
| To Seller: | To the address first set forth above |
| and a copy to: | Leo Jacobs, Esq. |
| | 595 Madison Avenue, 39th Floor |
| | New York, NY 10022 |
| | Email: leo@jacobspc.com |
| To Purchaser: | _____ |
| and a copy to: | _____ |

Or at such other addresses as the parties may designate to the other by written notice in the manner herein provided. Any such notices or elections shall be effective at the following

times: (i) upon delivery, if personally delivered; (ii) the first business day after delivery to the overnight courier; or (iii) the date of transmission if by fax, provided such transmission was received during business hours on any business day and otherwise on the next occurring business day.

11. Title Affidavit. If a search of the title discloses judgments, bankruptcies or other returns against other persons having names the same as or similar to that of Seller, Seller shall on request deliver to Purchaser an affidavit in form acceptable to the Title Insurer showing that such judgments, bankruptcies or other returns are not against Seller.

12. Allowance Out of Purchase Price. The amount of any amounts to be paid by Seller as per this Agreement may, at the option of Seller, be allowed to be paid by Purchaser on behalf of Seller out of the balance of the Purchase Price, provided that official bills therefore with interest and penalties thereon computed to such date are furnished by Seller at the Closing.

13. Survival of Representations. Except as otherwise expressly provided tothe contrary in this Agreement, no representations, warranties, covenants or other obligations of Seller set forth in this Agreement shall survive the Closing, and no action based thereon shall be commenced after the Closing.

14. Foreign Persons. At the Closing, Seller shall deliver to Purchaser either (a) an affidavit signed and sworn to under penalties of perjury by Seller stating that Seller is not a foreign person" (as defined in Section 1445 (F)(3) of the Internal Revenue Code of 1986, as amended (the "Code") or (b) a "Qualifying Statement"(as defined in Section 1445 (b)(4) of the Code).

15. Seller's Deliveries at Closing. In addition to the other items referred

to in this Agreement, Seller shall deliver any such other documents, instruments and agreements which are necessary or appropriate in order to consummate the transactions contemplated hereby.

16.    Condemnation.  Seller represents and warrants that Seller has no knowledge of pending or contemplated condemnation proceedings affecting the Premises or any part thereof as of the date hereof.

17.    Casualty and Condemnation.  The parties waive the provisions of Section 5-1311 of the General Obligations Law. If, prior to the Closing, all or a material part of the Premises is destroyed, by fire or the elements or by any cause beyond either party's control, without fault of Purchaser or is taken by eminent domain, Purchaser may, by notice to Seller given within ten (10) business days after notice to Purchaser of such destruction or taking, elect to cancel this Agreement. In the event that Purchaser shall so elect, the Down Payment shall be paid to Purchaser and neither party shall have any further rights or obligations hereunder.  Unless this Agreement is so canceled, or if less than a material part of the Premises is damaged by fire or other cause or taken by eminent domain, this Agreement shall remain in full force and effect in which event, Seller shall, on the Closing Date, and upon receipt of the balance of the Purchase Price, pay to Purchaser any sums of money collected by Seller under policies of insurance or as an award for any taking by eminent domain, this Agreement shall remain in full force and effect, in which event, Seller shall, on the Closing Date, and upon receipt of the balance of the Purchase Price, pay to Purchaser any sums of money collected by Seller under policies of insurance or as an award for any taking by eminent domain, after deducting any reasonable amount which Seller may have agreed or been obligated to pay for repairs or restoration of the damage, or in obtaining such award, in each case including attorneys' fees and

disbursements.  In addition Seller shall assign, transfer and set over to purchaser all of Seller's right, title and interest in and to said policies and any further sums payable thereunder, and all of Seller's right, title and interest in and to any portion of any condemnation award not yet received by Seller. Rent insurance proceeds, if any, shall be apportioned as of the Closing Date. For purposes of this Agreement, a material part of the Premises shall be deemed to be destroyed if the cost to repair any casualty shall exceed $250,000.00.

18.     No Modification.  This Agreement may not be modified or terminated orally or in any manner other than by an agreement in writing signed by all the parties hereto or their respective successors in interest.

19.     Governing Law. This Agreement and the Schedules annexed hereto (a) shall be governed by and construed in accordance with the laws of the State of New York and to the extent applicable, the Federal law of the United States (b) shall be given a fair and reasonable construction in accordance with the intentions of the parties hereto. For purposes of construction of this Agreement, provisions which are deleted or crossed out shall be treated as if never included herein.

20.     No Offer.  This document is not an offer by Seller, and under no circumstances shall this Agreement have any binding effect upon  Purchaser or Seller unless and until Purchaser and  Seller shall each have executed the same a delivered executed counterparts hereof to each other, and Bankruptcy Court approval and order approving this Agreement is obtained.

21.     Severability. If any provision of this Agreement is invalid or unenforceable as against any person or under certain circumstances, the remainder of this Agreement and the applicability of such provision to other persons or circumstances shall not

be affected thereby. Each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

22.     Counterparts. This Agreement may be executed in two or more counterparts, each of which shall constitute an original but all of which, taken together, shall constitute but one and the same instrument.

23.     No Third Party Beneficiaries.  The warranties, representations, agreements and undertakings contained herein shall not be deemed to have been made for the benefit of any person or entity other than the parties hereto.

24.     Publicity; Confidentiality. From and after the date hereof and continuing after the Closing  Date, (i) Purchaser shall treat all information disclosed to or otherwise obtained by Purchaser in connection with its review of the Premises and the transaction in a confidential manner, and shall not disclose any such information to any third party except as set forth below; and (ii) neither Purchaser nor Seller shall announce or disclose publicly the terms or provisions hereof  without the prior written approval of the other party, except as may be required to obtain Bankruptcy Court approval. Notwithstanding the foregoing, such disclosure shall be permissible (x) if required by American judicial law, (y) with respect to any information that shall be or become available to the general public or (z) by either party to its attorneys, accountants, permitted successors or assigns, lenders, financial advisors or any other advisor or consultant, provided that such parties are apprised of the foregoing restrictions and agree in writing to abide by them. Upon any termination of this Agreement, Purchaser shall cause its employees, contractors and agents to, deliver to Seller all property, documents, written studies and other materials relating to the Premises in such party's possession.

25.     No Waiver. No failure or delay of either party in the exercise of any right given to such party hereunder or the waiver by any party of any condition hereunder for its benefit (unless the time specified herein for exercise of such right, or satisfaction of such condition, has expired) shall constitute a waiver of any other or further right nor shall any single or partial exercise of any right preclude any other or further exercise thereof or any other right. The waiver of any breach hereunder shall not be deemed to be waiver of any other or any subsequent breach hereof.

26.     Successors and Assigns. This Agreement is binding upon, and shall inure to the benefit of the parties and their respective successors and permitted assigns.

27.     Waiver of Right to Trial By Jury. Both the Purchaser and Seller hereby irrevocably waive all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement.

28.     Court Approval. It is understood that this transaction and the parties' obligations hereunder are subject to approval by the United States Bankruptcy Court. Seller hereby agrees that any and all funds held by the Receiver shall be delivered to the Purchaser at closing. At Closing Purchaser shall pay any NYC and NYS transfer taxes if same are due, all title charges and fees.

29.     It is the specific intent of the parties that this sale is a "net sale" by Seller to Purchaser of all of Seller's right, title and interest in real property commonly known as 231 Norman Avenue, Unit 106, Brooklyn, NY, that in exchange for Seller's receipt of the Purchase Price, Seller assigns, transfers and sets over all sums due and owing and/or payable to, or held for the benefit of Seller.

30.     Escrow Provisions. The Down Payment shall be delivered to Counsel

to the Debtor ("Escrowee") and shall be held in escrow and not in trust by Escrowee in a non-interest bearing IOLA account. Escrowee shall pay the Down Payment to Purchaser or Seller, as applicable, at the Closing or otherwise in accordance with this Agreement. The parties further agree that:

(a)    Escrowee shall be protected in relying upon the accuracy, acting in reliance upon the contents, and assuming the genuineness, of any notice, demand, certificate, signature, instrument or other document which is given to Escrowee verifying the truth or accuracy of any such notice, demand, certificate, signature, instrument or other document;

(b)    Escrowee shall not be bound in any way by any other contract or understanding between the parties hereto, whether or not Escrowee has knowledge thereof or consents thereto unless such consent is given in writing;

(c)    Escrowee's sole duty and responsibility shall be to hold and disburse the Down Payment in accordance with this Agreement; provided, however, that Escrowee shall have no responsibility for the clearing or collection of any checks comprising any portion of the Down Payment;

(d)    Upon the disbursement of the Down Payment in accordance with this Agreement, Escrowee shall be relieved released from any liability under this Agreement;

(e)    Escrowee is herewith indemnified by Seller and Purchaser against any liabilities, damages, losses, costs or expenses incurred by, or claims or charges made against Escrowee (including attorneys' fees and court costs) by reason of Escrowee's acting or failing to act in connection with any of the matters contemplated by this Agreement or in carrying out the terms of this Agreement, except as a result of Escrowee's gross negligence or willful misconduct;

(f)    In the event that a dispute shall arise in connection with this Agreement, or as to the rights of any of the parties in and to, or the disposition of, the Down Payment, Escrowee shall have the right to (i) hold and retain all or any part of the Down Payment until such dispute is settled or finally determined by litigation, arbitration or otherwise, or (ii) deposit the Down Payment in an appropriate court of law, or (iii) institute an action in interpleader or other similar action permitted by stakeholders

in the State of New York, or (iv) interplead any of the parties in any action or proceeding which may be brought to determine the rights of the parties to all or any part of the Down Payment, following which Escrowee shall thereby and thereafter be relieved and released from any liability or obligation under this Agreement;

(g)  Escrowee shall not have any liability or obligation for loss of all or any portion of the Down Payment by reason of the insolvency or failure of the institution of depository with whom the escrow account is maintained; and

(h)  The parties hereto represent that prior to the negotiation and execution of this Agreement they were advised that Escrowee was representing Seller as its attorney in connection with this Agreement and the transaction referred to herein and the parties hereto covenant that they shall not object, on the grounds of conflict of interest or otherwise, to Escrowee continuing to act as Seller's attorney in connection with this Agreement and the transaction contemplated herein, or to act as Seller's attorney in connection with any dispute in connection herewith or any other matter, as well as act as Escrowee hereunder.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the day and year first above written.

SELLER

GREEN POINT MANAGEMENT SYSTEMS LLC

By: _____ Name:
    Title:

PURCHASER

_____

By: _____ Name:
    Title:

PUBLIC ADMINISTRATOR

_____

ESCROWEE

_____